603 A.2d 218

**ZINC CORPORATION OF AMERICA and Pacific Employers Insurance Company, Petitioners,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (BYERS, Jr. and St. Joe Minerals Corporation), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 31, 1991.

Decided Jan. 28, 1992.

Reargument Denied March 24, 1991.

James M. Poerio, for petitioners.

Daniel D. Harshman, for respondent St. Joe Minerals Corp.

Before CRAIG, President Judge, SMITH, J., and SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

Zinc Corporation of America and its insurance carrier, Pacific Employers Insurance Company (collectively Zinc), petition for review of an order of the Workmen's Compensation Appeal Board (Board) which affirmed the decision of the referee suspending payment of benefits, commencing February 22, 1988, to Edwin J. Byers, Jr. (Byers) pursuant to a Notice of Compensation Payable filed by St. Joe Minerals Corporation (St. Joe), and granting Byers' petition against Zinc for compensation benefits commencing March 3, 1988.[1]

Byers, prior to December 2, 1986, was employed by St. Joe as a refinery utility man which involved working on hot surfaces for considerable periods of time. On December 2, 1986 Byers suffered a work-related injury in the nature of a burn to the bottom of his left foot. Notwithstanding the injury, Byers continued to work at his same job during which time he was treated by the St. Joe plant nurse. Byers' injury did not improve and on July 9, 1987 Byers went to his family physician, Dr. Herbert Gray, who admit-

---

1. The referee also directed Zinc to reimburse payments made to Byers by St. Joe on and after March 3, 1988 and allowing Zinc to recoup such amount from Byers by deducting $50.00 from his weekly compensation until such overpayment is fully realized.

ted him to the Medical Center of Beaver County. On July 10, 1987, Dr. Gray referred Byers to Dr. Saturnino M. Reyes (Dr. Reyes) who undertook the care and treatment of Byers at all times herein relevant.

St. Joe, which was self-insured, pursuant to a Notice of Compensation Payable filed July 22, 1987, paid benefits to Byers beginning July 9, 1987. St. Joe continued to make payments to Byers until February 22, 1988 when Byers returned to work with Zinc[2] at the same job he performed at St. Joe. Byers worked through March 2, 1988. On March 3, 1988 Byers saw Dr. Reyes who, upon examination of Byers, found that the site of Byers' December 2, 1986 wound, which was healed and the old surface was scar tissue on February 22, 1988 when Byers returned to work, had split open and there was a slight discoloration across from the original site. (R.R. 55a–59a.)[3]

On March 3, 1988, St. Joe "reinstated payment of benefits" to Byers "based on a recurrence of disability" at the rate of $347.00 per week. (Referee's Finding of Fact (Finding) 17.) However, on March 28, 1988, St. Joe filed a Petition To Review Notice of Compensation Payable or Compensation Agreement (Petition for Review) under Section 413 of The Pennsylvania Workmen's Compensation Act (Act),[4] 77 P.S. § 771, wherein it alleged, "Employer wishes review of this matter as claimant's present disability is unrelated to the work injury of 12/2/86." (R.R. 3a.) Byers

2. Zinc had acquired the St. Joe facility on September 17, 1987.

3. The referee found as a fact, in his Finding of Fact 15, that "[t]he area in the site of the original ulcer reopened and in addition he developed discoloration on the sole of his left foot in the area below the fourth and fifth metatarsal phalangeal joints."

4. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1031. Section 413, 77 P.S. § 771, provides:

   A referee of the department may, at any time, review and modify or set aside a notice of compensation payable and an original or supplemental agreement or upon petition filed by either party with the department, or in the course of the proceedings under any petition pending before such referee, if it be proved that such notice of compensation payable or agreement was in any material respect incorrect.

filed an answer denying St. Joe's allegation and, in addition, Byers filed a Claim Petition against Zinc.[5]

Byers alleged that the nature of his injury was an "aggravation of a pre-existing foot injury." (R.R. 1a.) Zinc filed an answer denying the allegations of Byers' Claim Petition.[6]

Four hearings were held before the referee. Byers testified as to the events between December 2, 1986 and March 2, 1988 and, as to the time period subsequent to March 2, 1988, Byers testified about his medical treatment. Byers also took the deposition of his treating physician, Dr. Reyes, which was placed into evidence by Byers. Neither St. Joe nor Zinc presented any evidence at any of the four hearings to contradict Byers' testimony, neither did they present any medical testimony in opposition to that of the deposition testimony of Dr. Reyes.[7]

The referee issued his decision on May 30, 1989. The referee determined that Byers had suffered an aggravation of his December 2, 1986 injury, i.e., a new injury,[8] between February 22 and March 2, 1988, and granted Byers' Claim Petition against Zinc. The referee also granted St. Joe's Petition for Review by ordering a suspension of the Notice of Compensation Payable as of February 22, 1988 and by ordering Zinc to reimburse St. Joe for pay-

5. The Claim Petition filed by Byers was a cautionary measure, filed at the suggestion of the referee, in the event St. Joe's Petition for Review would be granted and St. Joe's liability terminated.

6. St. Joe's Petition for Review and Byers' Claim Petition were assigned to the same referee, thus effecting a consolidation of the two petitions. 1 Pa.Code § 35.45.

7. Both counsel for St. Joe and for Zinc stated on the record that they were not going to have Byers evaluated. (R.R. 22a, 37a.)

8. *Lackawanna Refuse v. Workmen's Compensation Appeal Board (Christiano)*, 74 Pa.Commonwealth Ct. 286, 459 A.2d 899 (1983), sets forth the standard that an aggravation of an injury is a new injury for which the insurer who was covering the employer at the time the aggravation occurred is responsible for compensation, while a recurrence of an injury is related to the prior injury so that the insurer who was covering the employer at the time of the prior injury is responsible for compensation.

ments it made on and after March 3, 1988. The Board affirmed the referee's decision on December 27, 1990.

■ Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, and whether all necessary findings of fact are supported by substantial evidence. *King v. Workmen's Compensation Appeal Board (Wendell H. Stone Co.)*, 132 Pa.Commonwealth Ct. 292, 572 A.2d 845 (1990).

Before applying the standard set forth in our scope of review, it is significant to note that subsequent to March 3, 1988 and at the time of the hearings herein, Byers was receiving compensation benefits by reason of St. Joe reinstating payment of benefits on March 3, 1988. The proceeding now before us was initiated not by Byers but by St. Joe to set aside its reinstatement of payment of benefits to Byers. Byers, at the suggestion of the referee, did file a Claim Petition against Zinc to obtain benefits; however, the purpose thereof was to protect himself against a discontinuance of benefits. By reason of the aforesaid, the only way for Byers to receive benefits from Zinc was if it were first determined that St. Joe, on and after March 3, 1988, was not liable for payment of benefits. With that as background, we address St. Joe's Petition for Review to ascertain whether the determination of the referee in suspending payments by St. Joe is supported by competent, substantial evidence or whether he committed an error of law.

■ It is beyond peradventure that St. Joe, in seeking to set aside its reinstatement agreement, had the burden to establish that Byers incurred a new, separate and different disabling injury between February 22 and March 2, 1988 rather than a recurrence of the one he suffered on December 2, 1986. In *Forbes Health System v. Workmen's Compensation Appeal Board (Washington)*, 75 Pa.Commonwealth Ct. 639, 463 A.2d 83 (1983), the employer, like St. Joe in the present case, claimed that the claimant's injury was not work related and argued that the referee erred by not placing upon the claimant the burden to

establish the causal connection between the injury and his employment. We held that it is the employer seeking to terminate benefits who bears the burden to prove a change in a claimant's disability and stated that, "[w]e have never held that in termination proceedings the burden shifts at anytime to the claimant to prove the existence of a causal connection between his disability and his injury." 75 Pa.Commonwealth Ct. at 642–643, 463 A.2d at 85.

In *Vann v. Unemployment Compensation Board of Review*, 508 Pa. 139, 494 A.2d 1081 (1985), the claimant was denied unemployment compensation benefits based on a determination of willful misconduct. At the hearing before the referee, the employer did not appear; however, the claimant did appear and testified. Notwithstanding the employer had the burden of proving willful misconduct, and the non-appearance of the employer at the hearing, the referee denied benefits to the claimant. The Board affirmed the referee, finding that the claimant's voluntary testimony carried the employer's burden of establishing willful misconduct. Upon appeal to this Court, we held that a referee is required to explain that, where the employer has the burden of proof, the claimant is not required to testify and that if the claimant did testify, his/her testimony could be used to support a determination of ineligibility. Upon further appeal, the Supreme Court determined that this Court erred in fashioning such a rule and held that a party who by law has the burden of producing sufficient evidence to support a favorable finding, if upon review of the entire record, that party failed in its burden, then the factfinder may rule in favor of the opposing party as a matter of law. The Supreme Court, rather than remanding the matter, reviewed the whole record and found it did not disclose any competent evidence to meet employer's burden of showing willful misconduct and it vacated this Court's order and remanded to the Board for computation of benefits.

The transcript of the four hearings in the present case conclusively establishes that St. Joe failed to present any

evidence in support of its petition to set aside its agreement reinstating payments to Byers. Thus, there was no competent evidence in the record to meet St. Joe's burden of proof and the referee erred in not ruling in favor of Byers on St. Joe's petition for review as a matter of law.

Additionally, the referee's determination that Byers suffered an aggravation of his December 2, 1986 injury between February 22, 1988 and March 2, 1988 thus rendering Zinc liable for payment of benefits to Byers on and after March 3, 1988 is not supported by substantial competent evidence.

The only expert medical testimony as to whether the disability of Byers on March 3, 1988 was either an aggravation of a prior injury or a recurrence of disability as a result of the prior injury was that of Dr. Reyes. Significantly, in the referee's Findings of Fact, of which there were 36, there is no finding of fact or conclusion of law that Dr. Reyes was not qualified or credible; nor did the referee find that Dr. Reyes' testimony was equivocal, self-contradicting or inconsistent.

The referee, under the heading Findings of Fact, listed the following:

22. *That it is obvious from the testimony elicited from Dr. Reyes* under direct and cross examination by counsel at his deposition that *he had great difficulty in determining the difference between a recurrence of disability as a result of the December 2, 1986 injury or an aggravation of said injury as a result of the claimant's environmental exposure resulting in disability. The doctor indicated in various parts of his testimony that the disability was caused by either a recurrence or aggravation of his foot problem.*[9] He felt that the word recurrence would better describe the condition. (Footnote added.) (Emphasis added.)

.    .    .    .    .

9. A review of the entire transcript of Dr. Reyes' deposition does not reveal that the doctor "indicated in various parts" that "the disability was caused by either a recurrence or aggravation of his foot problem."

28. That Dr. Reyes was of the opinion that the claimant as a result of his work related injury to his left foot had been disabled for performing the duties of his previous occupation since March 3, 1988 and that said left foot injury permanently precluded his returning to said occupation or any occupation requiring the wearing of steel toed shoes or walking on hot surfaces. He further indicated that the claimant could perform any occupation that would permit him to wear soft shoes and precluded his walking on hot surfaces. *The doctor's testimony left questionable the issue of whether the claimant's work related disability which occurred March 3, 1988 was caused by a recurrence of disability related to the December 2, 1986 injury or an aggravation of said injury caused by his work activity during the period from February 22, 1988 thru March 2, 1988.* (Emphasis added.)

It is the purpose and function of the Board, as well as the appellate court, to review the conclusions of law of the referee, while at the same time ascertaining that the facts found by the referee are supported by substantial evidence. *Lewis v. Commonwealth,* 508 Pa. 360, 498 A.2d 800 (1985). Determinations of a referee, although set forth under a heading of findings of fact, but which are conclusions of law, are fully reviewable. As was stated in *Lewis,* "A determination that certain medical testimony is equivocal is not ... a finding of fact; rather, it is a conclusion of law and as such fully reviewable." 508 Pa. at 366, 498 A.2d at 803. Likewise, herein, the referee's determination in Finding 22 that "Dr. Reyes under direct and cross examination ... had great difficulty in determining the difference between a recurrence of disability as a result of the December 2, 1986 injury or an aggravation of said injury as a result of the claimant's environmental exposure ..." and Finding 28, "[t]he doctor's testimony left questionable the issue of whether the claimant's work related disability which occurred March 3, 1988 was caused by a recurrence of disability related to the December 2, 1986 injury or an

aggravation of said injury caused by his work activity during the period from February 22, 1988 thru March 2, 1988" are not findings of fact but conclusions of law and fully reviewable.

The testimony of Dr. Reyes reveals that he neither had "difficulty" nor he "left questionable" whether there was a recurrence or an aggravation of Byers' December 2, 1986 injury.

Dr. Reyes testimony that when he first saw and examined Byers in the hospital on July 10, 1987, he found:

A. He had redness and also an ulcer-like wound in the bottom of his left foot located in what we call the first MP joint area, which is the area where the big toe is located, but it is in the bottom part of the foot. And he had redness and blister formation and the ulcer had dead skin around it.

He also had swelling of the left foot with indication of what we call a cellulitis or lymphangitis which is an inflammation of the deeper tissues. And at that time his sugar was also elevated when he was admitted. It was 237 milligrams percent and your normal is about maybe 80 to 110. So in essence he had the infected ulcer in the left foot.

(R.R. 46a–47a.)

Byers was discharged on July 14, 1987 and his condition at that time was, as testified to by Dr. Reyes:

A. He was discharged from the hospital on July 14, 1987 and at that time his ulcer was quite clean and his swelling in the left foot was no longer present and his sugar was also under control. . . .

(R.R. 47a.)

Between the time Byers was discharged from the hospital and his return to work on February 22, 1988, Dr. Reyes continued to see and treat Byers, i.e., prescribing antibiotics, cleaning of the wound with hydrogen peroxide washes and changing dressings, twice a day, and using crutches.

When healing of the wound occurred, Dr. Reyes testified as follows:

A.  When healing finally occurred completely and he requested that he wanted to try—I mean, the word is try to go back to work to see what will happen.  Of course, I warned him that there is a good chance that this might break down again.  So subsequently—the only way he could really go back to work is go back to his old job.  That's the bottom line.  That's what he told me and there was no other job he could get.

So ultimately he went back to work, after I acceded to his request that he do so.  On February 22, 1988 I released him to go to work, and following that, of course, the prediction happened.  The old ulcer reopened and, in addition, he developed other problems on the opposite side of the foot on the bottom part.

So I had to debride that and open the blisters on the other side as he had developed superficial infection and they were showing signs of developing deeper infection.

(R.R. 48a–49a.)

Dr. Reyes treated Byers for the condition he found on March 3, 1988 and testified as follows:

A.  ... I have really advised him to change jobs and not go back to the same environment after this thing *re-curred* after I released him to go back to work on February 22.

(R.R. 50a.)  (Emphasis added.)

Dr. Reyes, when asked his opinion as to whether Byers could perform his old job, testified:

A.  Well, at the present time I am not optimistic that he can go back to his old job because we tried once and I think that gave us the answer.  If he goes back to his old job, I think there's a good chance that he'll have more infection or he'll have a breakdown of the whole place—of the whole foot, I mean, and would probably eventually need drastic measures to get rid of it, but in all honesty, I

can't send him back to his old job as this will—I'm almost sure that this will *recur.*

.    .    .    .

(R.R. 51a.)   (Emphasis added.)

The foregoing excerpts of testimony are from Dr. Reyes' direct examination. We have read and reread Dr. Reyes' direct examination, and fail to find that Dr. Reyes, contrary to the referee's Finding 22, used the word "aggravation" therein.

On cross-examination by counsel for St. Joe, Dr. Reyes testified:

Q. Now, according to your records, was the wound healed at the site of the original problem for which you treated him between July 10, 1987 and February 22, 1988?

A. Yes.

Q. What would, if you could describe it for us, the wound have looked like by the time that you released him to go back to work on February 22, 1988?

A. The wound was healed in the sense that there was no opening and the old surface was scar tissue.

Q. He had no open wound whatsoever when you released him on February 22, 1988?

A. Right. He had no drainage or anything. And that's the only criteria I would have released him to go back to work.

(R.R. 55a–56a.)

Dr. Reyes, when asked what he found when he saw Byers on March 3, 1988, testified as follows:

A. He got an appointment to see me on March 3, 1988.

Q. Now—

A. At that time he said that he's been working and the original site had split open by the time I saw him on March 3.

Q. And what else did you find?

A. And at that time the patient also was—as far as I can remember he was also developing a slight discoloration

over across from the original site. I indicated it by this little circle here. That's like a slight discoloration, but nothing developing at that time.

(R.R. 57a.)

Dr. Reyes was further questioned as to the discoloration and he testified as follows:

Q. Would you mark with a Y the second site that you are referring to?

A. I have to say that this is only like a slight discoloration. In other words, no breakdown.

Q. Was there an actual open wound?

A. At the second.

Q. Yes.

A. At that time, no. There was slight discoloration of the skin over that area.

Q. Did it eventually become an open wound?

A. Yes. You see, what happened subsequently is that he developed blisters around it a week later and then I had to open it up and debride.

(R.R. 57a–58a.)

As to Dr. Reyes telling Byers not to return to the work he had been doing, his testimony was:

Q. What caused the problem that caused you to take him back off work effective March 3, 1988?

A. Well, the *recurrence* of the original site plus the development of the new site.

Q. What effect did his work between February 22, 1988 and March 3, 1988 have in producing these problems that caused you to take him back off work?

A. Well, it produces the *recurrence* of the original site plus the development of the new site.

(R.R. 61a.)   (Emphasis added.)

As to the effect of Byers working between February 22, 1988 and March 2, 1988, Dr. Reyes testified as follows:

Q. The work between 2/22/88 and 3/3/88, did it make the problem at the original site worse?

A. No. I think it produced the *recurrence*.

Q. It didn't worsen the problem?

A. It didn't worsen the problem in such a way that—you know, the breakdown was just a *recurrence* of the original problem and then—but *then at this time he had an extension to the other side* which is really a little worse than before.

Q. Was the original site healed when you let him go back to work on 2/22/88?

A. Yes.

Q. Was it worse when you saw him on 3/3/88 or was it the same?

A. It was open. It was split open. It was closed when I sent him back to work. It was healed over. I mean, it had scarred up which means the scar tissue has covered the original site which means it's healed, but when I saw him on 3/3/88, this thing has split open again which means whatever healing occurred had broken down again.

Q. What caused it to break down again?

A. The fact that he went back to the same circumstances that produced it in the first place.

(R.R. 64a–65a.)   (Emphasis added.)

The referee was not present at the deposition of Dr. Reyes; neither did he have the hospital or medical records of Byers from his December 2, 1986 injury and disability commencing July 9, 1987, nor from his disability commencing on March 3, 1988;[10] neither was there any medical testimony as to the cause of Byers' March 3, 1988 disability offered by either St. Joe or Zinc.

The only source of the referee's knowledge, as well as ours, relative to the causation of Byers' disability on March 3, 1988, is the deposition testimony of Dr. Reyes. Our reading of the entire transcript, excerpts of which we have hereinabove set forth, persuades us that Dr. Reyes, contrary to the conclusion of the referee, not only did not have "great difficulty" but in fact had no difficulty in determin-

10. Neither the hospital records nor the records of Dr. Herbert Gray or Dr. Reyes were in evidence.

ing the difference between a recurrence or an aggravation of an injury with resultant disability; neither did Dr. Reyes' testimony, contrary to the conclusion of the referee, "left questionable" the issue whether the disability of March 3, 1988 was caused by a recurrence of the December 2, 1986 injury or an aggravation of said injury.

As a prelude to Findings 22 and 28, the referee also listed under Finding 19 a statement of how he was going to proceed to determine the two petitions before him. He stated as follows:

19. That it should be clearly understood that this Referee will not ignore the expert testimony of Dr. Reyes nor will he substitute his own opinion for that of the doctor. The ultimate decision arrived at in this case will be based on the sequence of events that occurred prior to the onset of the claimant's disability and a review and analysis of the testimony of Dr. Reyes in its entirety.

The method used by the referee to determine whether the disability of March 3, 1988 was an aggravation of a prior injury or a recurrence of disability as a result of the prior injury, was the "sequence of events that occurred prior to the onset" of Byers' disability.

The sequence of events set forth in the Referee's findings of fact is that on December 2, 1986 Byers sustained a burn to the sole of his left foot (Finding 10); that on July 10, 1987, Dr. Reyes examined Byers and found an ulcer-like wound with dead skin around it in the area of the first metacarpal [sic] phalangeal joint and swelling indicating a lymphangitis or in essence an infected ulcer in the left foot (Finding 12); under Dr. Reyes' treatment the ulcer wound healed and Byers wanted to return to work; the doctor warned Byers that if he returned to the same work there was a good chance that his problem with his foot would break down; finally, when complete healing had occurred, the doctor on February 22, 1988 reluctantly released Byers to try to return to his previous occupation with a final warning that the problem with his foot might break down (Finding 13). Byers returned to work on February 22, 1988

and during the period thru [sic] March 2, 1988 worked a total of nine days. The area in the site of the original ulcer reopened and in addition he developed discoloration on the sole of his left foot in the area below the fourth and fifth metatarsal phalangeal joints (Finding 15); that although Byers had been a diabetic for approximately 17 years, he had never experienced problems with his left foot prior to the burn injury sustained to said foot on December 2, 1986 (Finding 20); that on February 22, 1988 Byers' left foot wound had completely healed and there was no further drainage. However, he was left with a left foot weakness which made him vulnerable to further break down of the affected area (Finding 25).

The foregoing findings of fact by the referee constitute all of the facts existing at and prior to the disability of March 3, 1988, which the referee set forth for the application of the "sequence of events that occurred prior to the onset of the claimant's disability." The sequence of events, if not sufficient to establish the fact that the current disability is obviously an aggravation of a prior injury and thus a new injury or is a recurrence of disability as the result of the prior injury, then unequivocal medical testimony is essential. *Byars v. Howard Cleaners*, 140 Pa.Superior Ct. 188, 13 A.2d 883 (1940); *Elonis v. Lytle Coal Co.*, 134 Pa.Superior Ct. 264, 3 A.2d 995 (1939).

It cannot be said that the events between December 2, 1986 and March 3, 1988 lead to but one obvious conclusion, i.e., that the disability of Byers on and after March 3, 1988 was caused by an aggravation of a prior injury. The referee, despite his protestation to the contrary, in Finding 19, shed his factfinding role and assumed the role of a medical expert. As a medical expert, the referee concluded, first, that Dr. Reyes not only "had great difficulty in determining the difference between a recurrence of a disability as a result of the December 2, 1986 injury or an aggravation of said injury" (Finding 22) but also that Dr. Reyes' testimony "left questionable the issue of whether the claimant's work related disability which occurred March

3, 1988 was caused by a recurrence of disability related to the December 2, 1986 injury or an aggravation of said injury" (Finding 28). The referee next, in total disregard of Dr. Reyes' testimony, concluded that Byers sustained an aggravation of the December 2, 1986 injury. The referee not only ignored the expert testimony of Dr. Reyes, but substituted his opinion for the unequivocal opinion of Dr. Reyes. In so doing he committed error.

Clearly, there is an absence of competent substantial evidence to support the order of the referee as affirmed by the Board.

## ORDER

AND NOW, this 28th day of January, 1992, it is hereby ORDERED as follows:

A. As to St. Joe Minerals Corporation's Petition to Review Notice of Compensation Payable Or Compensation Agreement

1. The order of the Board affirming the Referee's suspending compensation payable to Edwin F. Byers, Jr. pursuant to Notice of Compensation Payable is modified by limiting the suspension to only the period from February 22, 1988 through March 2, 1988.

2. The order of the Board in affirming the Referee's suspension of compensation payable to Edwin F. Byers, Jr. on and after March 3, 1988, is reversed; and the petition for review of St. Joe Minerals Corporation is dismissed.

B. As to Edwin F. Byers, Jr.'s Claim Petition For Compensation

1. The order of the Board affirming the Referee's award of compensation to Edwin F. Byers, Jr. and against Zinc Corporation of America, and/or its insurance carrier, Pacific Employers Insurance Company commencing March 3, 1988 and directing them to reimburse St. Joe Minerals Corporation for payments made by it to Edwin F. Byers, Jr.

238

on and after March 3, 1988 and providing for recoupment by Zinc Corporation of America, is reversed, and the claim petition of Edwin F. Byers, Jr. against Zinc Corporation of America is dismissed.