813 A.2d 634

**L.E. SMITH GLASS COMPANY, Appellant,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (CLAWSON), Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 11, 2002.

Decided Dec. 26, 2002.

Charles W. Craven, Philadelphia, William J. Walls, Pittsburgh, for Amerisure Ins. Co.

Julie Ann Roland, N. Huntingdon, James A. Holzman, Harrisburg, Amber Marie Kenger, Mechanicsburg, for WCAB.

Michael Anthony Johnson, Mt. Pleasant, for Milton Clawson.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

Justice NEWMAN.

We granted allocatur in this case to discuss whether a workers' compensation claimant can collect concurrent total disability awards for two separate injuries when each injury is totally disabling and, if so, the proper method of apportioning those awards. The Commonwealth Court determined that Milton Clawson (Clawson), the claimant in the present case, was entitled to concurrent total disability awards up to the statutory maximum for the year of the second injury; for the reasons discussed herein, we reverse the Order of the Commonwealth Court.

### *FACTS AND PROCEDURAL HISTORY*

Clawson injured his right wrist on October 23, 1989, while working for L.E. Smith Glass Company (Smith Glass) ("1989 injury"). Pursuant to a Notice of Compensation Payable, Clawson received weekly total disability payments in the

amount of $324.69 based on an average weekly wage of $487.03. Amerisure Companies (Amerisure), the workers' compensation insurer for Smith Glass from March 31, 1989 through March 31, 1990, made these payments to Clawson on behalf of Smith Glass. On September 4, 1990, Clawson returned to his pre-injury job without restrictions; he signed a Final Receipt on September 10, 1990.

On August 8, 1991, Clawson suffered another work-related injury, described as a sub-muscular left ulnar transposition ("1991 injury"), while in the employ of Smith Glass. At the time of the 1991 injury, Clawson's average weekly wage was $396.30.[1] Pursuant to an Agreement for Compensation dated October 11, 1991, State Workmen's Insurance Fund (SWIF), the workers' compensation carrier for Smith Glass in 1991, paid total disability benefits to Clawson in the amount of $264.20 per week.

In September of 1993, Clawson filed a Reinstatement Petition, requesting that the Workers' Compensation Judge (WCJ) set aside the Final Receipt he signed for the 1989 injury, alleging that he suffered a recurrence of the right wrist injury on April 6, 1992 ("1992 recurrence"). In his Petition, Clawson requested reinstatement of temporary total disability benefits for the 1989 injury and payment of medical bills for surgery performed on his right wrist in September of 1992. Amerisure filed an Answer denying the allegations set forth by Clawson.

Hearings proceeded before the WCJ, during which Amerisure discovered that Clawson was receiving benefits from SWIF for the 1991 injury. Amerisure sought to join SWIF as a defendant in Clawson's action, on the ground that SWIF, as risk insurer for Smith Glass on April 6, 1992, was solely liable for any benefits awarded to Clawson for the 1992 occurrence, which Amerisure categorized as either an aggravation of the 1989 injury or a new injury. SWIF filed an Answer to the

1. There is no explanation in the Record before this Court describing why Clawson was earning less money in 1991 than he was, in the same job, in 1989. Therefore, we assume that the decrease in average weekly wage was not related to the 1989 injury.

Joinder Petition, admitting that it was the carrier on April 6, 1992, but denying that Clawson suffered any aggravation of the 1989 injury or new injury.

In a decision dated September 5, 1995, the WCJ granted the Reinstatement Petition of Clawson, setting aside the Final Receipt he signed for the 1989 injury, and ordered Amerisure to reimburse SWIF for the temporary total disability benefits SWIF paid to Clawson, pursuant to the October 11, 1991 Agreement for Compensation, as of April 6, 1992, the date of the recurrence. The WCJ found that Clawson was totally disabled by the 1991 injury and that the 1991 injury and the 1992 recurrence were each, by itself, sufficient to cause Clawson's total disability. The WCJ concluded, as a matter of law, that Clawson could not receive benefits for the two injuries at the same time. The WCJ determined that the 1989 injury was the primary cause of Clawson's current disability and that, therefore, Amerisure was solely liable for benefits at the rate of $324.69 per week from the date of the recurrence. This reinstated the 1989 injury benefits and suspended benefits for the 1991 injury until such time as Clawson no longer qualified for total disability benefits from the 1989 injury.

Amerisure appealed to the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of the WCJ to set aside the Final Receipt Clawson signed for the 1989 injury, but reversed the determination of the WCJ that Amerisure was solely liable for benefits due Clawson. The WCAB held that, inasmuch as each of the injuries alone was totally disabling, each carrier should pay a *pro rata* share of benefits. Accordingly, the WCAB remanded the case to the WCJ for additional findings of fact and conclusions of law.

Without taking any additional evidence, on April 1, 1998, the WCJ resolved the apportionment issue by concluding that Clawson could receive cumulative benefits up to the maximum weekly compensation payable (statutory maximum) for 1991. In 1991, the statutory maximum was $436.00 per week. 77 P.S. § 25.2. The WCJ apportioned liability based on Clawson's average weekly wage at the time of each injury; the WCJ determined that Amerisure was responsible for $248.24 per

week and SWIF was responsible for $187.75 per week after April 6, 1992. The WCJ ordered Amerisure to reimburse SWIF for the difference between its previously imposed sole liability and the new determination of shared liability from the date of the 1992 recurrence to the date of circulation of the Order of the WCJ. Amerisure and SWIF both appealed to the WCAB.

The WCAB modified the decision of the WCJ in two respects: (1) it determined that the statutory maximum effective in 1989, of $399.00 per week, not the statutory maximum effective in 1991, should apply; and (2) it determined, on the basis of *Franklin Steel Company v. Workmen's Compensation Appeal Board (Clark)*, 665 A.2d 1310 (Pa.Cmwlth.1995), discussed *infra*, that Amerisure and SWIF should share liability evenly. Accordingly, the WCAB ordered Amerisure and SWIF to each pay Clawson $199.50 per week from April 6, 1992 forward; the WCAB affirmed the part of the decision of the WCJ that directed Amerisure to reimburse SWIF for overpayments, pursuant to the new calculation, from April 6, 1992 until the circulation date of the Order of the WCAB.

Amerisure appealed to the Commonwealth Court. The Commonwealth Court held that: (1) the 1989 injury recurred in April of 1992; (2) Clawson was entitled to receive total disability benefits up to the 1991 statutory maximum of $436.00; (3) the benefits should be apportioned *pro rata* between Amerisure and SWIF; and (4) Amerisure should reimburse SWIF for overpayment after April 6, 1992. The Commonwealth Court directed Amerisure to pay Clawson $240.39 per week and SWIF to pay Clawson $195.61 per week. In effect, the Commonwealth Court reinstated the April 1, 1998 decision of the WCJ.[2] Judge Smith–Ribner dissented, contending that Clawson was totally disabled by the 1991 injury and, because the 1992 recurrence did not result in any loss of earning power (as Clawson was already totally disabled), no apportionment or concurrent award was necessary.

2. It appears as though the slight discrepancy between the calculations of the WCJ and the Commonwealth Court regarding the relative liabilities of Amerisure and SWIF is attributable to a mathematical error.

Judge Smith–Ribner would have held SWIF, as workers' compensation insurer for Smith Glass at the time of the 1991 injury, liable for the entirety of total disability benefits due Clawson.

## DISCUSSION

 "The disability contemplated by the [Workers' Compensation Act] is the loss, total or partial, of the earning power from the injury." *Unora v. Glen Alden Coal Co.*, 377 Pa. 7, 104 A.2d 104, 107 (1954) (quoting *Woodward v. Pittsburgh Engineering and Construction Co.*, 293 Pa. 338, 143 A. 21, 22 (1928)). In *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987), we explained that "the workmen's compensation program is **not** a contributory insurance plan. Rather it is a means for the obtainment of compensation for injuries which has been substituted for common law tort actions between employees and employers." *Id.* at 377 (emphasis in original) (citing *Blake v. Wilson*, 268 Pa. 469, 112 A. 126, 128 (1920)). Accordingly, "a claimant's entitlement to workers' compensation benefits requires the claimant to prove that he suffered an injury in the workplace and that the injury impairs his ability to earn a wage." *Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa.276, 705 A.2d 432, 435 (1997) (quoting *Unora*, 104 A.2d at 107). *Accord Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa.32, 640 A.2d 1266, 1270 (1994) ("Benefits under the [Workers' Compensation] Act will only be permitted where the disabling, work related injury or disease, results in a loss of earning power").

The Commonwealth Court relied on *Franklin Steel* to support its decision to permit Clawson to recover concurrent total disability awards that exceeded Clawson's pre-injury earning power. In *Franklin Steel*, the claimant suffered a **left** shoulder injury on June 22, 1989, after which he underwent surgery and became totally disabled. Pursuant to a Notice of Compensation Payable dated January 21, 1990, PMA, Franklin Steel's risk insurer at the time, paid the claimant total disabili-

ty payments of $399.00 per week, which was equal to the 1989 statutory maximum allowable benefit level. The claimant returned to work on October 1, 1990, and signed a final receipt. On December 20, 1990, while still working for the same employer, the claimant suffered a **right** shoulder injury, rendering him totally disabled effective January 13, 1991. He received total disability benefits in the amount of $305.15 per week from Liberty Mutual, Franklin Steel's subsequent workers' compensation insurer. The claimant executed a final receipt on May 23, 1991. However, he did not return to work due to residuals from his 1989 **left** shoulder injury.

On June 28, 1991, PMA began paying total disability benefits, nullifying the October 1, 1990 final receipt. On August 12, 1991, the claimant returned to light-duty work and, pursuant to a supplemental agreement executed on September 5, 1991, the parties modified his total disability benefits to partial disability benefits. The claimant underwent another surgical procedure on his **left** shoulder on October 25, 1991, and PMA reinstated total disability benefits of $399.00 per week effective October 24, 1991. On December 20, 1991, the claimant had **right** shoulder arthroscopy and Liberty Mutual paid the medical expenses related to that procedure. A doctor examined the claimant on June 3, 1992, and determined that the residuals from both work injuries were substantial factors contributing to the claimant's overall total disability. The Commonwealth Court determined that the two injuries were both substantial contributing factors to the claimant's total disability and, therefore, ordered that PMA and Liberty Mutual should each pay a *pro rata* share of the claimant's total disability benefits.

*Franklin Steel* is distinguishable from the present case. In *Franklin Steel,* the Commonwealth Court found that the two injuries in combination were responsible for the claimant's total disability; in the case *sub judice,* the 1991 injury and the 1992 recurrence of the 1989 injury were each independently totally disabling. Where it is impossible to determine which injury caused a claimant's total disability, it is reasonable to make both insurers contribute to the claimant's benefits pack-

age. Moreover, it is important to note that the Commonwealth Court in *Franklin Steel* did not permit the claimant to aggregate the awards he received from PMA and Liberty Mutual, bounded only by the statutory maximum. The statutory maximum at the time of his second injury was $436.00, but the Commonwealth Court determined that the claimant was only entitled to total disability benefits of $399.00 per week. Thus, *Franklin Steel* does not support concurrent total disability awards; rather it stands for the proposition that two insurers should share the liability for one award where two injuries combine to cause total disability.

The Commonwealth Court also relied upon a similar line of cases starting with *Tomlinson v. Workmen's Compensation Appeal Board (J. Baker, Inc.)*, 167 Pa.Cmwlth.329, 648 A.2d 96 (1994). In May of 1985, Tomlinson suffered a work-related lower back injury, for which she received total disability benefits. In September of 1988, Tomlinson entered into a Supplement Agreement, whereby she acknowledged that her disability had changed from total to partial; the Agreement modified her benefits accordingly. Tomlinson returned to work, but in December of 1989, she suffered an additional injury in the course of her employment, which rendered her temporarily totally disabled. Tomlinson, who continued to receive $70.00 per week partial disability benefits from her original 1985 injury, sought to add $133.00 per week to that award, representing two-thirds of her average weekly wage at the time of the 1989 injury. The WCAB offset the $70.00 partial disability award, so that Tomlinson only received a total of $133.00 per week ($70.00 for the 1985 injury and $63.00 for the 1989 injury). The Commonwealth Court reversed and awarded Tomlinson $203.00 per week in benefits, reasoning that Tomlinson, "who was not working at her full earning capacity for [her employer] in 1989, [was] not limited to the loss of earnings for that job alone." *Id.* at 98.

Thus, *Tomlinson* correctly holds that where a claimant suffers a partial disability, continues to work, and then suffers another injury that renders her totally disabled, she can recover both awards concurrently. This comports with the

goal of the Workers' Compensation Act to compensate a claimant for her loss of earning power. *Unora, supra,* 104 A.2d at 107. The partial disability award for the first injury is intended to make up the difference between pre-injury earning power and post-injury earning power. The total disability award for the second injury only accounts for the loss of earning power caused by the second injury, which was already reduced because of the partial disability. *Tomlinson* is inapposite to the instant case because both of Clawson's injuries were totally disabling—Clawson never received partial disability benefits, which would have had the effect of decreasing his baseline wage-earning power before the subsequent injury.

*Yeager v. Workmen's Compensation Appeal Board (Schneider, Inc.),* 657 A.2d 1372 (Pa.Cmwlth.1995), *Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks),* 660 A.2d 162 (Pa.Cmwlth.1995), and *Trenton China Pottery & AIG Claims Service, Inc. v. Workers' Compensation Appeal Board (Mensch and Public Service Mutual),* 773 A.2d 1265 (Pa.Cmwlth.2001), are similar cases in which the claimants suffered partially disabling injuries and later suffered totally disabling injuries. These cases are equally irrelevant to the present case. The Commonwealth Court majority noted that the claimant in *Reliable Foods* received more in workers' compensation benefits through the aggregation of his partial disability award with his total disability award than he would have received based on his pre-injury average weekly wage. It is important to observe that it is always possible for a claimant who is partially disabled and then totally disabled to receive benefits in excess of what he would have received based on his average weekly wage before either injury. The claimant could receive pay increases or promotions, while employed in the lighter duty position, that would increase the sum of his average weekly wage in that position and the amount of weekly wages foregone by taking the lighter duty position originally to an amount greater than his average weekly wage before either injury. The relevant inquiry is not whether the amount of benefits due to the claimant exceeds two-thirds of the claimant's pre-injury average weekly wage;

rather, the inquiry is whether the amount of benefits is reflective of the claimant's loss in earning power.

Soon after releasing its decision in the present case, the Commonwealth Court handed down *Westmoreland Regional Hospital v. Workers' Compensation Appeal Board (Stopa)*, 789 A.2d 413 (Pa.Cmwlth.2001), involving a similar factual scenario. In January of 1995, Stopa suffered a rotator cuff injury, which rendered her totally disabled. In April of 1996, Stopa returned to modified duty work, so she received partial disability benefits to properly supplement her light-duty pay. In May of 1996, while performing her modified duty position, she sustained an injury to her right knee and, while undergoing physical therapy on her right knee in October of 1996, suffered a left knee injury. In November of 1997, Stopa filed a Reinstatement Petition alleging entitlement to reinstatement of her total disability benefits from the 1995 injury and a Claim Petition seeking total disability benefits for the 1996 left knee injury. The WCJ and WCAB permitted Stopa to recover both awards up to the statutory maximum in effect at the time. The Commonwealth Court reversed, concluding that to allow Stopa to collect two total disability awards would be equal to compensating her twice for losing the same position.

■ We agree with the reasoning employed by the Commonwealth Court in *Stopa*. At no time did Clawson possess earning power greater than $487.03 per week. He received total disability benefits based on the loss of that earning power from October 23, 1989 until September 10, 1990, when he returned to his previous position without restrictions, and where he remained until his August 8, 1991 injury. At the time of the 1991 injury, Clawson was not suffering from any impairment resulting in wage loss. At the time of the 1992 recurrence, Clawson was already receiving total disability benefits for the 1991 injury and suffered no additional wage loss due to this recurrence. Clawson had earning power and lost that earning power as a result of the 1991 injury; at the time of the 1992 recurrence, however, Clawson had no earning power.

As Judge Smith–Ribner stated in her cogent and well-reasoned dissent to the decision of the Commonwealth Court in the case *sub judice:*

> [T]he [Commonwealth] Court has approved concurrent awards only in circumstances where the original injury resulted in partial disability or where one of the awards was for specific loss. The [Commonwealth] Court has expressly disapproved the result endorsed by the majority [of the Commonwealth Court] here, namely, concurrent awards for wage loss benefits where the first award was for total disability. As the cases repeatedly state, disability is loss of earning power. Where a claimant is totally disabled already when he or she suffers another injury (in this case recurrence of Clawson's 1989 injury) there is no loss of earning power at that time. For this reason the courts have not approved such an award.

*L.E. Smith Glass Company v. Workers' Compensation Appeal Board (Clawson),* No. 1857 C.D. 1999, slip op. at 4 (Pa. Cmwlth. December 28, 2001) (Smith–Ribner, J., dissenting).

As Clawson is currently receiving total disability benefits from SWIF for the 1991 injury, he has not suffered a disabling injury as that is defined under the Workers' Compensation Act (defining disability as a loss of earning power). Accordingly, he is not entitled to benefits for the 1992 recurrence of the 1989 injury.[3] However, we recognize the possibility that

**3.** We recognize that the Commonwealth Court has consistently held that a recurrence of an injury relates back to the date of the original injury (in this case, the 1992 recurrence would date back to 1989). *See Lackawanna Refuse v. Workmen's Compensation Appeal Board (Christiano),* 74 Pa.Cmwlth.286, 459 A.2d 899, 899–900 (1983) ("If the current disability is an 'aggravation' of the prior injury, there has been a new injury. Under these circumstances, the carrier who was insuring an employer when the aggravation occurred is the responsible carrier. On the other hand[,] if the disability is a recurrence of disability as a result of a prior injury, then the carrier who was insuring at the time of the original injury is responsible"); *accord ITT–Hartford Insurance Group v. Workmen's Compensation Appeal Board (Atlantic Mutual Insurance Co.),* 688 A.2d 247, 249 (Pa.Cmwlth.1997); *Birmingham Fire Insurance Co. v. Workmen's Compensation Appeal Board (Kennedy),* 657 A.2d 96 (Pa. Cmwlth.1995); *Zinc Corp. of America v. Workmen's Compensation Appeal Board (Byers),* 145 Pa.Cmwlth.221, 603 A.2d 218 (1992). However, these cases concern situations where there is a single injury that

the 1991 injury could resolve at some point in the future. As the WCJ determined that the 1992 recurrence by itself would be totally disabling, it properly granted the Reinstatement Petition and set aside the Final Receipt for the 1989 injury. To ensure that Clawson will be properly compensated for his injuries, both of which are, by themselves, totally disabling, we remand the matter to the Commonwealth Court with the direction to shepherd an ultimate remand to the WCJ to: (1) grant the Reinstatement Petition and set aside the Final Receipt for the 1989 injury and; (2) suspend benefits for that injury until such time as Clawson's entitlement to benefits for the 1991 injury changes. Until then, SWIF should remain solely liable to Clawson for total disability benefits in the amount of $264.20 per week.[4]

## CONCLUSION

We reverse the Order of the Commonwealth Court to the extent that it permits Clawson to stack the benefits from the 1989 injury and the 1991 injury up to the 1991 statutory maximum. We remand the matter to the Commonwealth Court to enter an Order consistent with this Opinion.

---

resolves and then re-manifests as opposed to a recurrence of a previous injury where there is an unrelated, intervening injury to another part of the body. Moreover, these cases deal with questions of responsibility between insurers for benefits undoubtedly due to the claimant, not whether the latter event is compensable at all.

4. Amcrisure remains responsible for Clawson's medical bills stemming from the 1992 recurrence of the 1989 injury.