SOUTH ABINGTON TOWNSHIP and
St. Paul Fire & Marine Insurance
Co., Petitioners,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (BECKER AND ITT
SPECIALTY RISK SERVICES), Re-
spondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 3, 2003.

Decided Aug. 29, 2003.

Matthew P. Barrett, Scranton, for petitioners.

Eugene N. McHugh, Harrisburg, for respondent.

BEFORE: SMITH–RIBNER, Judge, LEADBETTER, Judge, JIULIANTE, Senior Judge.

OPINION BY Judge LEADBETTER.

South Abington Township (employer) through its insurer, St. Paul Fire & Marine Insurance Company, petitions for review of an order of the Workers' Compensation Appeal Board (Board), which affirmed the decision and order of a Workers' Compensation Judge (WCJ) granting the claim petition of Donald Becker (claimant) against St. Paul but de-

nying both claimant's petition for reinstatement of benefits and St. Paul's joinder petition against Hartford Insurance Company. The questions presented for review are (1) whether claimant's November 1998 injury constituted an aggravation of a pre-existing condition and (2) whether claimant's medical and wage loss benefits should be apportioned between St. Paul and Hartford. We affirm.

In early January of 1994, while employed as a South Abington Township police officer, claimant sustained an injury to his right hip and groin after slipping on snow during a police investigation of a traffic accident. Employer accepted the injury as compensable and claimant began receiving temporary total disability benefits through employer's insurer at the time, Hartford. Compensation was suspended on April 4, 1994, following claimant's return to work but was later reinstated on August 10, 1994, after claimant continued to experience pain in his right hip. In September of 1994, claimant was examined by Dr. Jeffrey A. Mogerman, a board certified physician in orthopedic surgery, who diagnosed claimant as having avascular necrosis and osteoarthritis in the hip area pre-dating claimant's work-related injury. Dr. Mogerman also observed an exacerbation of the avascular necrosis and osteoarthritis in claimant's right hip as a result of claimant's fall and recommended that claimant undergo a core decompression of the right hip, in lieu of a hip replacement, to help slow or prevent the progression of the degenerative process. The decompression procedure was performed on September 26, 1994, and disability benefits were suspended after claimant's condition improved such that he was able to return to work in February of 1995 on a full-time basis with a "no running" restriction. Claimant returned to Dr. Mogerman's office on four occasions for follow-up examinations from June 12,

1995 through December 6, 1996. During this time, claimant continued to experience discomfort in the right hip but was still able to perform his full-time work duties. In addition, Dr. Mogerman observed no progression of avascular necrosis or osteoarthritis in either side of claimant's hip.

In November of 1998, claimant was training a new police officer when he began experiencing extreme pain in his right hip. During the training, claimant was on the passenger side of the police car and was required to exit the vehicle on his right leg. After exiting the vehicle on the right side on several occasions, claimant testified that he experienced a level of pain equal to what he experienced prior to his decompression procedure four years earlier. Claimant was unable to continue working after November 17, 1998, and returned to see Dr. Mogerman, who noted a further exacerbation of avascular necrosis and osteoarthritis in claimant's right hip. In addition, x-rays revealed the presence of a subchondral fracture in claimant's right hip. Consequently, upon the recommendation of Dr. Mogerman, claimant underwent hip replacement surgery in January of 1999. Claimant did not return to work after November 1998.

On March 8, 1999, claimant filed a claim petition for workers' compensation benefits against employer's current insurer, St. Paul, claiming that he sustained a new work place injury. On April 27, 1999, claimant filed a petition for reinstatement of benefits on the grounds that his current injury was a recurrence of his previous injury in January of 1994. On April 30, 1999, St. Paul filed a petition to join employer's previous insurer, Hartford. The petitions were consolidated before the WCJ.

In support of his petitions, claimant submitted the deposition testimony of Dr.

Mogerman, who testified that claimant's pre-existing condition together with his injuries in January of 1994 and November of 1998 led to claimant's disability and eventual need for hip replacement surgery. St. Paul submitted the deposition testimony of Dr. David Cooper, a board certified physician in orthopedic surgery, to support its contention that claimant's disability was simply the result of the natural progression of his pre-existing degenerative condition and that claimant's work activities did not cause claimant's current disability or necessitate the need for hip replacement surgery. Hartford submitted the deposition testimony of Dr. William R. Prebola, a board certified physician in physical medicine and rehabilitation, who testified that claimant had fully recovered from the January 1994 injury after undergoing decompression surgery and that claimant was, therefore, not experiencing a recurrence of that injury. Based on the presented evidence, the WCJ made the following relevant findings of fact:

19. .... Both Dr. Cooper and Dr. Mogerman diagnosed the Claimant with avascular necrosis and osteoarthritis of the right hip. However, the two physicians did not agree on the effect of the January 6, 1994 slip and fall accident on those conditions or on the effect of repeatedly getting in and out of the police cruiser after Claimant returned to work had on the Claimant's condition. [sic] The testimony and opinions of Dr. Mogerman are more credible and more persuasive than those of Dr. Cooper on the issue of the effect of the January 6, 1994 fall on Claimant's condition. Dr. Mogerman was in a better position than Dr. Cooper to determine the effect which the January 6, 1994 injury had on the Claimant. Dr. Cooper only saw the Claimant on one occasion, while Dr. Mogerman had the opportunity to follow the claimant over the years and monitor the progress of his condition. In addition, the opinion of Dr. Mogerman is more comprehensive than that of Dr. Cooper. Dr. Mogerman's opinion is supported by the opinion of the radiologist who interpreted the Claimant's [November 1998] X-rays and found evidence of a subchondral fracture. This tends to show that the activity of getting in and out of the police cruiser did materially aggravate the Claimant's underlying hip condition. Finally, the opinion of Dr. Mogerman is supported by the credible opinion of Dr. Prebola that the January 6, 1994 slip and fall accident aggravated the osteoarthritis which was already present. The opinion of Dr. Cooper that the January 6, 1994 work accident and the activity of getting in and out of the police cruiser did not aggravate the Claimant's condition is not credible. In fact, it was only after these work related incidents that the Claimant was forced off work and into surgery. Prior to these incidents, the Claimant was able to continue working.

20. The testimony and opinions of Dr. Prebola are both credible and convincing. ... His opinion that the January 6, 1994 fall aggravated the osteoarthritis which was already present in the claimant's right hip is supported by that of Dr. Mogerman. His opinion is logically stated and consistent with Claimant's testimony and the nature of the condition.

. . . .

23. Claimant had bilateral avascular necrosis ... and ... osteoarthritis.

These two conditions predated the Claimant's January 6, 1994 slip and fall but were not sufficiently severe to disable the Claimant. However, the January 6, 1994 slip and fall sufficiently aggravated the osteoarthritis condition as to require core decompression surgery and render the Claimant disabled.

24. [T]he repeated activity in 1998 of getting in and out of the patrol car materially aggravated the osteoarthritis in the Claimant's right hip as to require total [sic] hip replacement surgery and ... render him totally disabled. The January 6, 1994 work accident and the 1998 activity of getting in and out of the patrol car materially aggravated the Claimant's pre-existing condition....

    . . . .

26. In November of 1998, Claimant sustained a new work injury when he again aggravated his pre-existing osteoarthritis and avascular necrosis while repeatedly entering and exiting his police cruiser. Claimant's pain increased throughout November of 1998 until he could no longer work....

27. Claimant's period of disability after November 28, 1998 and any medical treatment for his hip condition beginning in November 1998 and continuing to the present has been the result of his new injury in November 1998....

WCJ's Opinion and Order at 6–8 (June 19, 2000). Based on his findings, the WCJ concluded that claimant had suffered a new work injury, thus, rendering St. Paul liable for all of claimant's medical and wage loss benefits from the period of November 1998 to the present.

On appeal, the Board vacated the WCJ's order to the extent that it held St. Paul responsible for medical costs and wage loss benefits relating to claimant's right hip replacement surgery in January of 1999 but affirmed in all other aspects. In its decision, the Board noted that it was unable to identify which evidence the WCJ relied on to support a finding that the January 1999 surgery was necessitated by claimant's work activities given that the WCJ accepted the testimony of both Dr. Mogerman and Dr. Prebola as credible even though both disagreed as to what inciting factors were directly responsible for claimant's right hip replacement. Consequently, the Board remanded for more specific findings regarding the cause of this procedure and claimant's subsequent disability.

On remand, the WCJ made the following additional relevant findings of fact:

1. Dr. Mogerman's opinion that the January 1994 work injury materially aggravated claimant's underlying hip condition as to require core decompression and subsequent hip replacement surgery is the most credible and convincing evidence of record. Dr. Mogerman's opinion is the most logically stated explanation of what has occurred to the claimant, given claimant's credible testimony, x-ray and examination findings.

2. Dr. Prebola's testimony is not accepted in its entirety. Dr. Prebola's testimony is only credible to the extent that he opines that the January 6, 1994 slip and fall work injury aggravated the osteoarthritis which was present in claimant's hip. Dr. Prebola's opinion that claimant fully recovered from the January 6, 1994 work injury or that the 1999 hip replacement surgery was necessitat-

ed by claimant's preexisting arthritic condition is specifically rejected as not credible. Those portions of Dr. Prebola's testimony are inconsistent with the testimony of Dr. Mogerman which has been found to be the most credible and convincing evidence of record, supported not only by the doctor's objective findings over the years but the x-ray findings as well.

. . . .

11. As of November 28, 1998 claimant had sustained a further exacerbation of his avascular necrosis and osteoarthritis due to his work activities resulting in a . . . work injury distinct from the first work injury of 1994 due to the degree of exacerbation.

12. The new work injury of 1998 further changed the structure of claimant's hip by taking his exacerbated avascular necrosis and osteoarthritis to a new level of exacerbation as to ultimately require the hip replacement surgery performed in 1999.

WCJ's Opinion and Order at 2–3 (May 24, 2002). Accordingly, the WCJ held St. Paul liable for all medical costs and wage loss benefits associated with claimant's hip replacement surgery in January of 1999. On appeal, the Board affirmed.

In the instant appeal, St. Paul claims that "There Is Not Substantial Competent Evidence to Support a Finding That St. Paul Fire & Marine Insurance Co. Is Solely Responsible for Benefits Owed to Claimant Beginning November 29, 1999. . . ." St. Paul's Brief in Support of Appeal at 15. Specifically, St. Paul argues that the WCJ's finding that claimant's January 1994 and November 1998 injuries both materially contributed to claimant's disability and hip replacement surgery does not support the legal determination that it is solely liable for all of claimant's medical and wage loss benefits. St. Paul asserts that the WCJ erred by not apportioning liability between St. Paul and Hartford under Section 322 of the Pennsylvania Workers' Compensation Act (Act).[1] We disagree.

■ Initially, we note that Section 322 does not mandate apportionment; it merely allows it where apportionment is otherwise appropriate. Our courts have recognized two such situations. First is that represented by *Franklin Steel Co. v. Workmen's Compensation Appeal Board (Clark)*, 665 A.2d 1310 (Pa.Cmwlth.1995), in which two separate work-related injuries result in two entirely separate medically disabling conditions, both of which combined to cause total disability, or lack of earning power. As our Supreme Court has noted in discussing *Franklin Steel*, "Where it is impossible to determine which injury caused a claimant's total disability, it is reasonable to make both insurers contribute to the claimant's benefit package." *L.E. Smith Glass Co. v. Workers'*

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 677. Section 322 provides, in pertinent part:

Nothing in this section shall be deemed to prohibit payment of workers' compensation on a pro-rata basis, where an employe suffers from more than one injury while in the employ of more than one employer: Provided, however, That the total compensation paid shall not exceed the maximum weekly compensation payable under this act: And, Provided further, That any such pro rata calculation shall be based upon the earnings by such an employe in the employ of each such employer and that all wage losses suffered as a result of any injury which is compensable under this act shall be used as the basis for calculating the total compensation to be paid on a pro-rata basis.

*Comp. Appeal Bd. (Clawson),* 571 Pa. 594, 600, 813 A.2d 634, 638 (2002).

■ The other situation in which apportionment has been recognized is where an initial workplace injury leads to a medical condition causing a partial disability, or impairment of earning power, and then a second workplace injury results in a total loss of earning power. In that circumstance, the first employer (or insurance carrier) continues to pay partial disability benefits which compensate claimant for the reduction in earning power occasioned by the first injury, while the second employer or carrier pays total disability benefits based upon the modified wage at the time of the second injury, thus compensating claimant for the additional loss of earning power. This is the situation in *Trenton China Pottery v. Workers' Compensation Appeal Board,* 773 A.2d 1265 (Pa.Cmwlth. 2001), also relied upon by St. Paul. However, although the court in *Trenton China Pottery* apportioned liability under Section 322, a number of decisions had reached the same result without reference to Section 322, simply holding each employer responsible for the effects of its own workplace injury.[2] *See, e.g., Tomlinson v. Workmen's Comp. Appeal Bd. (J. Baker, Inc.),* 167 Pa.Cmwlth.329, 648 A.2d 96 (1994); *Yeager v. Workmen's Comp. Appeal Bd. (Schneider, Inc.),* 657 A.2d 1372 (Pa. Cmwlth.1995); *Reliable Foods, Inc. v. Workmen's Comp. Appeal Bd. (Horrocks),* 660 A.2d 162 (Pa.Cmwlth.1995). As the *Smith Glass* court noted, "The partial disability award for the first injury is intended to make up the difference between pre-injury earning power and post-injury earning power. The total disability award for the second injury only accounts for the loss of earning power caused by the second injury, which was already reduced because of the partial disability." 571 Pa. at 602, 813 A.2d at 638.

■ However, where a claimant has returned to work after his first injury and then a worsening of his ongoing medical impairment causes renewed disability, we have sought to determine whether the worsened condition results from a recurrence or an aggravation of the original injury. We have held that if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident *which does not contribute materially* to the physical disability, then the claimant has suffered a recurrence. Conversely, where the intervening incident *does materially contribute* to the renewed physical disability, a new injury, or aggravation, has occurred. *SKF USA, Inc. v. Workers' Comp. Appeal Bd. (Smalls),* 728 A.2d 385, 387 (Pa.Cmwlth. 1999). It is well settled in Pennsylvania that an "aggravation of a pre-existing condition" is deemed a new injury for purposes of workers' compensation law, thus, rendering the employer's current insurance carrier responsible for all medical and wage loss benefits arising from claimant's new injury. *Lackawanna Refuse v. Workmen's Comp. Appeal Bd. (Christiano),* 74 Pa.Cmwlth.286, 459 A.2d 899, 899 (1983). *See also Reliable Foods, Inc.,* 660 A.2d at 166 n.9. Alternatively, if a claimant has sustained a "recurrence of a prior injury," the insurance carrier responsible for employer's coverage at the time of claimant's original injury will be held liable for all disability benefits resulting from claimant's most recent injury. *Lackawanna Refuse,* 459 A.2d at 900. The terms "ag-

---

2. The result is the same because Section 322 requires that the pro-rata share of benefits "be based on the employee's earnings at the time each of the insurers provided overage to the employer." *Trenton China Pottery,* 773 A.2d at 1268. Thus, in that case we set each insurer's pro-rata liability based on claimant's actual wage loss from each injury.

gravation of a pre-existing condition" and "recurrence of a prior injury" are legal terms of art that are utilized to attribute causation of the current disability to a particular event or series of events. *Reliable Foods, Inc.*, 660 A.2d at 166. However, as we noted in *SKF USA*, "In most situations where this sort of dispute arises, *both* the original injury and the subsequent occurrence contribute in some way to the disability at issue. Nonetheless, [where claimant worked for different employers (or one employer had different carriers) at the time of the two events, we] must attribute causation of the current disability to one event or the other." 728 A.2d at 387. In the recurrence scenario the second employer has no responsibility at all because the second event has not materially contributed to the claimant's current condition. In the case of an aggravation, the second employer bears the entire responsibility for the claimant's recent loss of earning power despite the fact that both injuries materially contributed to his current physical condition.

■ In other words, while we allocate liability for benefits based on relative contributions to claimant's total lack of earning power, as in *Franklin Steel* or *Trenton China Pottery*, neither the Act nor our case law has ever attempted to allocate responsibility based upon relative contributions of separate injuries to a *single disabling medical condition*. This is true for two reasons. First, where a second workplace injury aggravates a medical condition caused by the first, it is often impossible to determine what share each injury played in the ultimate medical impairment. Second, employers take claimants as they are at the time of injury. If a claimant has a non-work related predisposition which is rendered fully disabling by a workplace injury that would not have disabled other workers, employer is 100%

liable for benefits even if the injury is only 5% responsible for the resulting physical impairment. Accordingly, where a second workplace injury aggravates the condition in which claimant was left by the first, we allocate responsibility for payment of benefits based upon the impact each injury has upon earning power, not upon the relative causal contribution of each to the ultimate *physical disability*. Thus, if the claimant has returned to work after the first injury with no loss of earning power, the second employer bears full responsibility for whatever loss of earning power is occasioned by the aggravation. Conversely, if the claimant had returned to a modified job at lower pay, the first employer would continue to pay for the initial reduction in earning power, while the second employer alone would pay for the additional wage reduction after the aggravation.

■ In the instant case, claimant was working with no loss of earnings from his January 1994 injury when he suffered an aggravation in November 1998. Therefore, his entire loss of earning power is the responsibility of St. Paul, employer's carrier in 1998. Accordingly, the WCJ did not err by failing to pro-rate liability between St. Paul and Hartford.

For the foregoing reasons, we affirm.

### ORDER

AND NOW, this 29th day of August, 2003, the order of the Workers' Compensation Appeal Board in the above captioned matter is hereby AFFIRMED.