**TRENTON CHINA POTTERY &
AIG CLAIMS SERVICE,
INC., Petitioners,**

v.

**WORKERS' COMPENSATION AP-
PEAL BOARD (Mensch and Pub-
lic Service Mutual), Respondents.**

**Lawrence Mensch, Petitioner,**

v.

**Workers' Compensation Appeal Board
(Trenton China Pottery),
Respondent.**

Commonwealth Court of Pennsylvania.

Submitted Oct. 27, 2000.

Decided April 3, 2001.

---

Wendy L. Slear, Philadelphia, for petitioners.

Marshall A. Haislup, III, Philadelphia, for respondent, Public Service Mutual.

Christina J. Barbieri, Philadelphia, for respondent, Lawrence Mensch.

Before McGINLEY, Judge, FRIEDMAN, Judge, and MIRARCHI, Senior Judge.

FRIEDMAN, Judge.

Trenton China Pottery (Employer) and AIG Claims Services, Inc. (AIG) appeal from the June 26, 2000 order of the Workers' Compensation Appeal Board (WCAB), which: (1) affirmed the decision of a workers' compensation judge (WCJ) to deny Employer's termination petition; and (2) reversed the WCJ's decision to apportion liability for the wage loss and medical benefits of Lawrence Mensch (Claimant) between Employer's two insurers, AIG and Public Service Mutual (PSM). Claimant has filed a cross-appeal.

Claimant sustained a work-related injury to his lower back on January 4, 1996 while working as a driver for Employer. Employer and PSM, Employer's insurer at the time, paid Claimant workers' compensation based on an average weekly wage (AWW) of $573.82. Claimant returned to work in a light-duty position and received partial disability benefits in the amount of $163.62 per week. Claimant's treatment for his work injury consisted of physical therapy twice a week and the taking of flexeril and motrin. (WCJ's Findings of Fact, Nos. 2, 4, 7–10, 21, 27.)

On October 9, 1996, while Employer was insured by AIG, a car struck Claimant's delivery vehicle from the rear. Claimant was thrown forward, striking his left shoulder on the doorframe. Claimant experienced left shoulder pain, extreme lumbar pain and numbness in both legs. Claimant has not returned to work since then. Claimant's physical therapy has increased to three times per week, and Claimant now takes pamelor and ultram in addition to his other medications. In spite of the additional treatment and medications, Claimant has not returned to the condition he was in before the October 9, 1996 injury. Claimant's AWW as of October 9, 1996 was $333.54. (WCJ's Findings of Fact, Nos. 4, 10, 26.)

Claimant filed a claim petition against Employer and AIG, alleging that he sustained injuries to his left shoulder and an aggravation of his lower back injury on October 9, 1996. PSM filed a termination petition alleging that Claimant fully recovered from his January 4, 1996 injury as of

April 3, 1997. AIG issued an Agreement for Compensation, acknowledging a work-related injury on October 9, 1996. (WCJ's Findings of Fact, Nos. 2–4.)

The WCJ granted the claim petition, finding that, on October 9, 1996, Claimant sustained "a progression/worsening of a herniated L5 S1 disc, lumbar radiculopathy, worsening lumbar pain and acute lumbar pain superimposed on a prior herniated L5 S1 disc." [1] (WCJ's Findings of Fact, No. 24.) The WCJ denied the termination petition, finding that Claimant was not fully recovered from the January 4, 1996 injury. (WCJ's Findings of Fact, No. 23.) The WCJ also concluded that, because Claimant's January 4, 1996 and October 9, 1996 injuries *both* substantially contribute to Claimant's disability, PSM and AIG are each fifty-percent liable for Claimant's medical and disability benefits. (WCJ's Findings of Fact, Nos. 28–30.)

PSM appealed to the WCAB, which affirmed the WCJ's denial of PSM's termination petition. As for Claimant's claim petition, the WCAB determined that the record supports an aggravation of Claimant's prior injury on October 9, 1996, but the record does *not* support a "recurrence" on that date. (WCAB's op. at 7.) The WCAB concluded that AIG is solely responsible for Claimant's injuries and, accordingly, reversed the apportionment of wage loss and medical benefits between AIG and PSM. (WCAB's op. at 7.) Employer and AIG filed appeals with this court, and Claimant filed a cross-appeal.

## I. Wage Loss Benefits

On appeal,[2] Employer and AIG, as well as Claimant, contend that the WCAB erred in reversing the apportionment of wage loss benefits. We agree; however, we hold that the WCJ erred in apportioning wage loss benefits *equally* between PSM and AIG.

Section 322 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 677 (emphasis added), provides, in pertinent part, as follows:

> Nothing in this section shall be deemed to prohibit payment of workers' compensation on a pro-rata basis, where an employe suffers from *more than one injury* while in the employ of more than one employer: Provided, however, That the total compensation paid shall not exceed the maximum weekly compensation payable under this act: And, Provided further, That *any such pro rata calculation shall be based upon the earnings* by such an employe in the employ of each such employer and that all wage losses suffered as a result of any injury which is compensable under this act shall be used as the basis for calculating the total compensation to be paid on a pro rata basis.

In *Franklin Steel Company v. Workmen's Compensation Appeal Board (Clark)*, 665 A.2d 1310 (Pa.Cmwlth.1995), this court held that section 322 of the Act permits the pro-rating of compensation among different insurers of the same employer.

Here, the WCJ found that Claimant's disability was the result of more than one injury, stating that "both Claimant's January 4, 1996 and October 9, 1996 work injur[ies] substantially contribute to Claim-

---

1. Although the claim petition alleged that Claimant also sustained a left shoulder injury on October 9, 1996, the WCJ did not mention a left shoulder injury in Findings of Fact, No. 24.

2. Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704.

ant's disability." [3] (WCJ's Findings of Fact, No. 29.) Thus, it was proper for the WCJ to apportion wage loss benefits between PSM and AIG. However, the WCJ erred in making each insurer liable for fifty percent of Claimant's wage loss benefits. Under section 322 of the Act, any apportionment of workers' compensation must be based on the employee's earnings at the time each of the insurers provided coverage to the employer.

▉ Here, AIG's liability for Claimant's wage loss benefits is based on Claimant's AWW on October 9, 1996, which the WCJ found to be $333.54. (WCJ's Findings of Fact, No. 26.) Under section 306(a) of the Act, 77 P.S. § 711, AIG is liable to Claimant for sixty-six and two-thirds percent of $333.54, or $222.36 per week in wage loss benefits.[4] PSM is liable for partial disability benefits relating to Claimant's January 4, 1996 work injury.[5] Pursuant to section 306(b) of the Act,[6] PSM's obligation to Claimant is sixty-six and two-thirds percent of the difference between Claimant's AWW on January 4, 1996 and Claimant's earning power thereafter. The difference between Claimant's January 4, 1996 AWW of $573.82 and Claimant's October 9, 1996 earning power of $333.54 per week is $240.28. Sixty-six and two-thirds percent of $240.28 is $160.19 per week; thus, PSM is liable to Claimant for $160.19 per week in partial disability benefits.[7]

3. The WCAB failed to recognize the presence of two injuries in this case, having determined that the record does not support both a "recurrence" and aggravation of Claimant's prior injury on October 9, 1996. (WCAB's op. at 7.) However, the WCJ does not use the word "recurrence" anywhere in her decision. In denying Employer's termination petition, which the WCAB affirmed, the WCJ simply found that there was a *continuation* of Claimant's January 4, 1996 injury. We have stated: "If an injury is a continuation of an earlier injury, then the employer/insurance carrier at the time of the earlier injury is liable for the payment of [workers'] compensation benefits." *Fidelity Mutual Life Insurance Company v. Workmen's Compensation Appeal Board (Gourley),* 126 Pa.Cmwlth. 188, 559 A.2d 84, 86 (1989).

4. We note that, under section 306(a) of the Act, if the benefit amount so calculated is less than fifty percent of the statewide average weekly wage (SAWW), the benefit shall be the lower of fifty percent of the SAWW or ninety percent of Claimant's AWW. 77 P.S. § 511(1). Here, AIG evidently determined that $222.36 was less than fifty percent of the 1996 SAWW of $527.00. Thus, AIG increased Claimant's benefit payment to $263.50, the lower of fifty percent of the SAWW and ninety percent of Claimant's AWW. (WCJ's Findings of Fact, No. 26); *see* 26 Pa. B. 633 (1996).

However, the "fifty percent of the SAWW" provision in section 306(a) is intended to establish a minimum benefit payment for those individuals who are most in need of economic aid. *See Walton v. Cooper Hosiery Company,* 48 Pa.Cmwlth. 284, 409 A.2d 518 (1980). We do not believe that such a provision applies in cases where the claimant is receiving, and will continue to receive, partial disability benefits *in addition to* the total disability benefits *and* where the additional benefits raise the claimant's total compensation above fifty percent of the SAWW. In this case, Claimant was receiving $163.62 per week in partial disability benefits from PSM. (WCJ's Findings of Fact, No. 4.) Adding the $163.62 per week to the $222.36 per week results in a sum of $385.98, which is above fifty percent of the SAWW by $122.48 per week.

5. *See Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks),* 660 A.2d 162 (Pa.Cmwlth.1995) (holding that where a claimant is receiving partial disability benefits following a return to work and, then, is totally disabled as a result of a new injury, the claimant is entitled to receive compensation for both injuries concurrently, so long as the maximum compensation payable is not exceeded).

6. 77 P.S. § 512.

7. We note that the sum of $222.36, AIG's share of Claimant's wage loss benefits, and $160.19, PSM's share, is $382.55, which is the total amount of wage loss benefits that the

## II. Medical Benefits

▮ Employer and AIG also argue that the WCAB erred in concluding that AIG is solely liable for Claimant's medical bills. We agree.

▮ An employer shall provide payment for reasonable and necessary medical treatment in connection with an employee's work injury. Section 306(f.1) of the Act, 77 P.S. § 531. Where an employee has sustained distinct and separate work injuries on two different occasions and the employer's insurer was not the same carrier in each instance, the carrier providing coverage to the employer at the time of the initial work injury is liable for the medical bills pertaining thereto. *See Refiners Transport and Terminal v. Workmen's Compensation Appeal Board (Harris)*, 159 Pa.Cmwlth. 48, 632 A.2d 979 (1993). The carrier providing coverage to the employer at the time of the later work injury is responsible for medical expenses related to that injury. *Id.*

Thus, here, PSM is liable for Claimant's medical expenses with respect to the January 4, 1996 work injury, and AIG is obligated to pay medical bills associated with the October 9, 1996 work injury. Claimant's treatment for his January 4, 1996 work injury consisted of physical therapy twice a week and the taking of flexeril and motrin; such treatment is PSM's responsibility. After the October 9, 1996 work injury, Claimant's physical therapy increased to three times a week, and Claimant began to take pamelor and ultram in addition to his other medications; this additional treatment is AIG's responsibility.

Based on the foregoing analysis, we reverse the WCAB's reversal of the WCJ's decision to apportion liability between PSM and AIG, but we modify the apportionment as set forth above.

WCJ found to be due Claimant. (WCJ's Findings of Fact, No. 30.)

## ORDER

AND NOW, this 3rd day of April, 2001, that portion of the order of the Workers' Compensation Appeal Board, dated June 26, 2000, which reversed the apportionment of liability between the insurance carriers is hereby reversed. In addition, the apportionment of liability between the insurance carriers is modified as set forth in the foregoing opinion.

McGINLEY, Judge, Dissenting.

I respectfully dissent to the learned majority's decision to reverse the Workers' Compensation Appeal Board's (Board) order that reversed the WCJ's decision to equally apportion wage loss and medical benefits between AIG and PSM with respect to Claimant's claim petition.

I agree with the Board that the WCJ erroneously applied Section 322 of the Workers' Compensation Act (Act), Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 677, which authorizes the WCJ to apportion benefits when an employee sustains multiple work injuries with more than one employer. I agree this Court has determined that Section 322 of the Act also authorizes the WCJ to apportion benefits when an employee sustains multiple work injuries with the same employer where the injuries are covered by different insurance companies. *Franklin Steel Co. v. Workmen's Compensation Appeal Board (Clark),* 665 A.2d 1310 (Pa.Cmwlth.1995).

I differ from the majority as follows. I do not believe that the apportionment analysis of Section 322 is applicable here. In this case, Claimant suffered a work-related back injury on January 4, 1996, and suffered a work-related injury to the same body part on October 9, 1996.

Claimant's physician, Dawn Rider Foster, M.D. (Dr. Rider Foster), whom the WCJ found credible, testified within a reasonable degree of medical certainty that after the January 4, 1996, injury and before the October 9, 1996, injury Claimant suffered from "[c]hronic lumbar pain secondary to a work-related injury in January of 1996 with a small herniated disc at L5 S1 and T10; possible lumbar radiculopathy at that time." Deposition of Dawn Rider Foster, M.D., February 16, 1998, (Dr. Rider Foster Deposition) at 35.

Dr. Rider Foster also testified that Claimant never recovered from the January 4, 1996, injury. Dr. Rider Foster Deposition at 39. After the October 9, 1996, incident, Dr. Rider Foster opined that Claimant suffered from:

> progression or worsening of the L5 S1 herniated disc secondary to the motor vehicle accident that he sustained in October of 1996 while at work, lumbar radiculopathy, worsening of his lumbar pain. I would say an acute lumbar strain on top of the herniated disc.... The cause was his initial work-related injury January of 1996 when he had an *850 pound refrigerator* [the record indicates that instead of a refrigerator, it was a pizza oven] fall on top of him, and this was exacerbated by the second injury he had in October of 1996, the motor vehicle accident. (Emphasis added).

Dr. Rider Foster Deposition at 36.

Dr. Rider Foster believed that Claimant's inability to perform his job at the time of the January 4, 1996, injury was due to both the January 4, 1996, and October 9, 1996, incidents.

In *Franklin Steel*, there were starkly different causes of the disabilities. Robert C. Clark suffered injuries to *two different shoulders in two incidents*, not an injury to the same body part as happened here. Like the Board I believe the true and precise issue is whether Claimant suffered a recurrence or an aggravation as a result of the October 9, 1996, incident. I agree with the Board that the "pro rata" remedy of Section 322 of the Act does not control.

In this regard I empathize with the Board. The Board found itself in that minefield of workers' compensation law that involves the subtle distinction between aggravation and recurrence. The phrase "aggravation of a pre-existing condition" denotes a new work-related injury while a "recurrence of a prior injury" denotes an injury directly related to a prior injury. *Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks)*, 660 A.2d 162 (Pa.Cmwlth.1995).

In *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385 (Pa.Cmwlth.), *petition for allowance of appeal denied*, 561 Pa. 663, 747 A.2d 903 (1999), this Court addressed the distinction between a recurrence and an aggravation:

> In most situations where this sort of dispute arises, both the original injury and the subsequent occurrence contribute in some way to the disability at issue. Nonetheless, in order to adjudicate the rights of the parties, we frequently must attribute causation of the current disability to one event or the other. Thus, we have held that if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident which does not contribute materially to the disability, then the claimant has suffered a recurrence.... Conversely, of course, where the intervening incident does materially contribute to the disability, a new injury, or aggravation, has occurred.... Whether or not the intervening incident materially contributed to the disability is a question of fact to be determined by the WCJ.

*SKF USA, Inc.*, 728 A.2d at 387–388.

This Court further explained that it is the role of the WCJ to make the factual

finding of causation which then leads to the legal conclusion that the claimant sustained a separately compensable injury, an aggravation; or renewed symptoms of the old injury, a recurrence.

Here, Claimant was working in a light duty capacity because of the first injury. Then, he was injured in a collision while driving a truck in the course and scope of his employment. The resulting injury, as Dr. Rider Foster credibly described, was a worsening of Claimant's herniated L5–S1 disc.

Neither directly nor straightforwardly asked of Dr. Rider Foster by counsel was the crucial question whether the October 9, 1996, subsequent accident substantially or materially contributed to Claimant's total disability.[1]

Although not as precise as desired, given Dr. Rider–Foster's credited testimony, I agree with the Board's conclusion that sufficient credited information was elicited from Dr. Rider–Foster to inescapably conclude that Claimant suffered an aggravation. I would affirm.[2]

---

1. Blame should not be visited on counsel for this omission. Essentially, the contest was between the medical experts, and as so often the case, hinged upon which one would be believed. Claimant's counsel was entitled to a favorable verdict so long as Dr. Rider Foster was believed. Counsel for PSM, the first insurer, did ask its medical expert the crucial question and so did counsel for AIG, the second insurer. The WCJ specifically rejected the opinions of the insurers' medical experts where such opinions conflicted with those of Dr. Rider Foster. Counsel could not know the WCJ's credibility determinations in advance. Perhaps for tactical reasons, counsel for PSM and AIG chose not to ask this critical question of Dr. Rider Foster, given that Dr. Rider Foster was Claimant's expert and counsel did not know what answer she would give. However, because the precise inquiry was not made, I believe the WCJ embarked on an erroneous course to pro rata apportionment based upon an incorrect interpretation of Dr. Rider Foster's opinion.

2. As no party challenged the method of calculating apportionment made by the WCJ, and because I do not believe that benefits should be apportioned here, I will refrain from addressing the majority's calculation of benefits.