## GUARD INSURANCE GROUP AND RAILWORKS a/k/a H.P. McGinley, Petitioners

v.

## WORKERS' COMPENSATION APPEAL BOARD (YORK AND TIG PREMIER INSURANCE), Respondents.

Commonwealth Court of Pennsylvania.

Submitted Oct. 29, 2004.

Decided Jan. 10, 2005.

As Amended Jan. 25, 2005.

---

Melissa A. Krishock, Norristown, for petitioner.

Robert D. Hamilton, Harrisburg, for respondent, Stephen York.

Marta J. Guhl, Philadelphia, for respondent, TIG Premier Insurance.

BEFORE: FRIEDMAN, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge FRIEDMAN.

Guard Insurance Group and Railworks a/k/a H.P. McGinley (Employer) petition for review of the June 7, 2004, order of the Workers' Compensation Appeal Board (WCAB), which affirmed the decision of a workers' compensation judge (WCJ) granting the claim petition filed by Stephen York (Claimant), apportioning liability for Claimant's compensation benefits pro rata between Eastguard Insurance Company[1] (Eastguard) and TIG Premier Insurance (TIG) and apportioning liability for attorneys' fees and litigation costs equally between Eastguard and TIG. We affirm.

On July 16, 1998, while stacking blocks in the course of his employment for Employer, Claimant sustained an injury to his lower back. Claimant gave timely notice of the injury to his supervisor and was out of work until July 22, 1998. (WCJ's Findings of Fact, No. 1.) Eastguard was Employer's insurer at the time of this initial injury.

On July 22, 1998, Claimant returned to work for Employer, but he still was suffering from low back pain and right leg pain and was taking various medications for it. Claimant also underwent physical therapy and had several diagnostic tests. After July 22, 1998, Claimant performed his regular work duties and, sometimes, light duty work instead, but his pain continued and worsened with work activities until his physician removed him from work as of November 10, 2000. (WCJ's Findings of Fact, No. 1.) TIG was Employer's insurer on November 10, 2000.

On January 22, 2001, Claimant filed two claim petitions, each seeking total disability benefits beginning November 10, 2000, and payment of medical bills, counsel fees and litigation costs. The first claim petition was filed against Employer and Eastguard alleging disability resulting from the low back injury Claimant suffered on July 16, 1998; defendant Eastguard filed a timely answer to this claim petition. The second petition, also alleging a low back injury, was filed against Employer and TIG, and listed a date of injury of November 10, 2000; defendant TIG did not file an answer to this claim petition until March 22, 2003. (R.R. at 1a–8a.) By agreement of all parties, the claim petitions were consolidated for hearing and disposition by the WCJ.

---

1. Eastguard Insurance Company is a subsidiary of Guard Insurance Group.

Claimant testified on his own behalf and offered the medical testimony of William J. Beutler, M.D., a board-certified neurosurgeon who first evaluated Claimant on January 9, 2001. Based on that evaluation, a review of Claimant's records and MRI results, Dr. Beutler opined that Claimant had suffered two distinct injuries: an L5–S1 herniated disc suffered on July 16, 1998, which accounted for Claimant's low back and right side symptoms; and an L4–5 herniated disc that occurred some time after an August 19, 2000, MRI, which accounted for the symptoms on Claimant's left side. Dr. Beutler testified that both injuries were caused by Claimant's work for Employer and combined to produce Claimant's total disability as of November 10, 2000, and continuing into the future. (WCJ's Findings of Fact, No. 3.)

Eastguard offered the testimony of Jason J. Litton, M.D., a board-certified orthopedic surgeon, who examined Claimant on September 18, 2001, and reviewed his medical records and reports. Dr. Litton testified that: Claimant's physicians made no objective findings; Claimant was pain-free between July and November of 1998; Claimant's examination was not normal, but there were no objective findings; MRIs in 1999 and 2000 showed possible disc herniations at L5–S1 on the right; and Claimant was fully recovered from the July 16, 1998, work injury as of the date of his September 18, 2001, examination. Dr. Litton opined that Claimant did not suffer a disc herniation on July 16, 1998, but did sustain a work-related back strain on that date. (WCJ's Findings of Fact, No. 4.)

TIG offered the testimony of Craig W. Fultz, M.D., a board-certified orthopedic surgeon, who evaluated Claimant on May 3, 2001, and reviewed his medical records,

diagnostic films and reports. Dr. Fultz testified that Claimant suffered a work-related disc herniation at L5–S1 on July 16, 1998, and that Claimant had not recovered from that injury. Dr. Fultz opined that Claimant suffered no discrete work injury on November 10, 2000. (WCJ's Findings of Fact, No. 5.)

The WCJ accepted the opinion of Dr. Beutler, Claimant's treating physician, as more competent, credible and consistent with the totality of the evidence than the opinions of both insurers' medical witnesses. Relying on Dr. Beutler's testimony, the WCJ found that Claimant suffered two distinct work-related injuries, each of which contributed substantially and materially to Claimant's total disability as of November 10, 2000. Based on this finding, the WCJ apportioned liability between Eastguard and TIG on a pro rata basis. The WCJ further found that Eastguard was responsible for paying Claimant's reasonable and necessary medical bills related to his work injury and incurred between July 16, 1998 and November 9, 2000, and that such expenses incurred on and after November 10, 2000, would be shared equally between Eastguard and TIG, unless it could be determined whether the particular medical service was attributable solely to one of the two injuries. (WCJ's Findings of Fact, Nos. 6–8.) Finally, finding that both Eastguard and TIG presented unreasonable contests, the WCJ awarded Claimant counsel fees in quantum meruit and other litigation costs, to be apportioned equally between the insurance carriers. (WCJ's Findings of Fact, Nos. 11, 13.)

Eastguard appealed to the WCAB, which affirmed, and Eastguard now petitions to this court for review.[2]

---

**2.** Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law and whether the necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

Eastguard first argues that the WCAB erred in upholding the apportionment of benefits between Eastguard and TIG. Relying on *South Abington Township v. Workers' Compensation Appeal Board (Becker)*, 831 A.2d 175 (Pa.Cmwlth.2003), Eastguard maintains that TIG should be solely liable for Claimant's benefits because Claimant aggravated his initial injury on November 10, 2000, while he was covered under TIG's policy and after Claimant had returned to work with no loss of earnings. However, Eastguard's reliance on *South Abington* is misplaced.

In *South Abington*, we recognized that apportionment of liability is permitted under section 322 of the Workers' Compensation Act (Act)[3] in either of two scenarios:

[The] [f]irst is that represented by *Franklin Steel Co. v. Workmen's Compensation Appeal Board (Clark)*, 665 A.2d 1310 (Pa.Cmwlth.1995), in which two separate work-related injuries result in two entirely separate medically disabling conditions, both of which combined to cause total disability, or lack of earning power. As our Supreme Court has noted in discussing *Franklin Steel*, Where it is impossible to determine which injury caused a claimant's total disability, it is reasonable to make both insurers contribute to the claimant's benefit package. *L.E. Smith Glass Co. v. Workers' Comp. Appeal Bd. (Clawson)*, 571 Pa. 594, 600, 813 A.2d 634, 638 (2002).

The other situation in which apportionment has been recognized is where an initial workplace injury leads to a medical condition causing a partial disability, or impairment of earning power, and then a second workplace injury results in a total loss of earning power. This is the situation in *Trenton China Pottery v. Workers' Compensation Appeal Board*, 773 A.2d 1265 (Pa.Cmwlth.2001). *South Abington* at 180.

We distinguished these scenarios from the situation where apportionment is not warranted, i.e., "where a claimant has returned to work after his first injury and then a worsening of *his ongoing medical impairment* causes renewed disability." *Id.* at 181 (emphasis added). We then stated:

In other words, while we allocate liability for benefits based on relative contributions to claimant's total lack of earning power, as in *Franklin Steel* or *Trenton China Pottery*, neither the Act nor our case law has ever attempted to allocate responsibility based upon relative contributions of separate injuries to a *single disabling medical condition.*

*Id.* at 182 (emphasis in original).

■ In this case, the WCJ credited the testimony of Dr. Beutler who opined that Claimant had suffered *two separate and distinct injuries to different body parts:* an L5–S1 herniated disc on July 16, 1998, and an L4–5 herniated disc after August 19, 2000. Dr. Beutler further testified that Claimant's separate and distinct work-related injuries each contributed substantially and materially to Claimant's total disability. Where, as here, a claimant has suffered two work-related injuries to different body parts, each a substantial contributing factor to his or her total disability and each covered by a separate insurance carrier, the claimant's benefits are appropriately paid by both insurers on a pro-rata basis. *Franklin Steel.* Accordingly, the WCAB did not err in affirming the WCJ's decision to apportion payment of Claimant's benefits between Eastguard and TIG.

■ However, relying on section 416 of the Act, Eastguard argues that TIG's

**3.** Act of June 2, 1915, P.L. 736, *as amended,*     77 P.S. § 677.

late answer to Claimant's claim petition required a finding that Claimant's disability was due solely to an injury on November 10, 2000, thus absolving Eastguard from liability. Where an employer files an untimely answer, every fact alleged in the claimant's the claim petition shall be deemed admitted by the employer. Section 416 of the Act, 77 P.S. § 821.

The WCJ found that, because TIG's answer was untimely, the following well-pled allegations of Claimant's claim petition were deemed admitted at least through March 22, 2003: Claimant suffered a low back injury on November 10, 2000, while he was lifting and stacking wood blocks on Employer's premises in the course and scope of his employment; Claimant gave oral notice of the injury to his supervisor; Claimant was working as a laborer and working only for Employer at the time of his injury, and the injury caused Claimant to stop working. (WCJ's Findings of Fact, No. 2.) However, Claimant's claim petition against Employer and TIG did not allege that the November 10, 2000, injury was the *sole* cause of Claimant's total disability. (Claim petition, R.R. at 3a–4a.)

Although these admitted allegations *do* require the WCJ to find that Claimant sustained an injury on November 10, 2000, they do *not* require the WCJ to find that Claimant's disability was due *solely* to that injury. The WCJ was free to find that *another injury* to a different body part, i.e., Claimant's July 16, 1998, L5–S1 herniated disc, *also* contributed substantially and materially to Claimant's total disability.

Finally, Eastguard argues that the WCAB erred in affirming the imposition of attorneys' fees and litigation costs on it based on an unreasonable contest. East-

guard maintains that there was not substantial evidence for the finding that its contest was unreasonable and, therefore, attorneys' fees and litigation costs should not be imposed against Eastguard. Again, we disagree.

Under section 440 of the Act, 77 P.S. § 996, the WCJ is required to impose attorneys' fees and litigation costs in addition to the award of compensation benefits unless a reasonable basis for the contest has been established. *Franklin Steel.* The reasonableness of an employer's contest is a matter of law which must be based on the facts found by the WCJ and supported by substantial evidence. *Id.* An employer's contest will be considered reasonable if there is a genuinely disputed issue; however, an employer cannot rely on a controversy between an employer's two insurance companies as to which insurance company was liable as evidence of a reasonable contest. *Id.*

In *Franklin Steel,* the liability of the employer for the claimant's injury had already been established, and the only remaining issue in the case was which one of the employer's two insurance companies was liable for the claim. We affirmed the WCJ's required imposition of attorney's fees and other costs and held that the controversy between the employer's two insurance companies was a controversy among parties on the same side, not a controversy between an employer and a claimant and that an employer cannot rely upon such a controversy as evidence of a reasonable contest. *Id.*

Here, as in *Franklin Steel,* the only issue in dispute is the liability of two insurance companies representing the same Employer, where neither insurer had a reasonable contest with Claimant.[4] Thus,

---

4. Eastguard's notice of denial denied that a work injury occurred on July 16, 1998; however, Eastguard's medical witness admitted that a work-related injury had occurred on that date. Based on this reasoning, the WCJ found that Eastguard's contest was unreason-

the WCAB did not err in affirming the imposition of attorneys' fees and litigation costs on Eastguard.

Accordingly, we affirm.

### ORDER

AND NOW, this 10th day of January, 2005, we hereby affirm the June 7, 2004, order of the Workers' Compensation Appeal Board.

able. (WCJ's Findings of Fact, No. 9.) TIG could not contest the occurrence of the injury or Claimant's disability because of its late answer so its contest was, likewise, unreasonable. (WCJ's Findings of Fact, No. 10.)