**SAFETY NATIONAL CASUALTY CORPORATION and Penn State University, Petitioners**

v.

**WORKERS' COMPENSATION APPEAL BOARD (DRAPER AND PMA INSURANCE GROUP), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted Sept. 2, 2005.

Decided Nov. 30, 2005.

---

Scott M. Schwartz, Harrisburg, for petitioners.

Daniel M. Jaffe, Philadelphia, for respondent, H. Richard Draper.

David T. Latoff, Blue Bell, for respondent, PMA Insurance Group.

BEFORE: COLINS, President Judge, and LEADBETTER, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

Petitioners Safety National Casualty Corporation (Safety) and Penn State University (Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board) which, in relevant part, granted the appeal of PMA Insurance Group (PMA) from an order of a Workers' Compensation Judge (WCJ). The WCJ had, in relevant part and on remand from this Court, apportioned disability benefits previously awarded to H. Richard Draper (Claimant) pursuant to the Pennsylvania Workers' Compensation Act[1] (Act) between Safety and PMA. The Board affirmed the WCJ's order in part, and modified that order's apportionment of wage loss liability between the two insurers. We affirm.

On March 18, 1990, Claimant was injured in the course and scope of his employment when he fell and struck his head. Thereafter, Claimant began receiving partial disability benefits under the Act for an injury to his cervical spine. He subsequently returned to work for Employer on light duty while continuing to receive his partial disability benefits from Employer's insurer at that time, PMA.

On December 9, 1999, Claimant filed a Claim Petition alleging that he had sustained multiple injuries on November 1, 1999, as a result of his involvement in a motor vehicle accident within the course and scope of his work for Employer. On November 1, 1999, Safety was Employer's insurer. Employer filed an Answer to Claimant's Claim Petition, denying the material allegations therein.

On January 18, 2000, Claimant filed a Reinstatement Petition alleging total disability related to his 1990 injury after Employer dismissed him from his light duty

---

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4; 2501–2626.

position in the wake of his 1999 injuries. Employer and PMA timely filed an Answer to Claimant's Reinstatement Petition, denying the material allegations therein.

Claimant's Petitions were subsequently consolidated, and hearings thereafter ensued before the WCJ. By order circulated September 6, 2001, the WCJ, in part relevant to the instant proceedings, granted Claimant's Claim Petition, concluding that he had met his burden of proving that he sustained disabling work-related injuries as a result of the 1999 accident, which injuries related to his 1990 work-related injury and also included new injuries. The WCJ further concluded that as of November 1, 1999, PMA was entitled to a suspension of Claimant's partial disability benefits related to the 1990 injury. Additionally, the WCJ denied Claimant's Reinstatement Petition, concluding that Claimant did not meet his burden thereunder.

Employer and Safety appealed the WCJ's decision and order to the Board, which reversed the WCJ's suspension of PMA's payments of Claimant's previous partial disability award, and remanded the case back to the WCJ for a recalculation of Claimant's average weekly wage and for apportionment of Claimant's award between PMA and Safety. Claimant thereafter timely appealed the Board's order, dated October 21, 2002, to this Court, arguing *inter alia* that the Board erred in its remand for apportionment of the benefits due between PMA and Safety.

Addressing the apportionment issue in our prior opinion, *H. Richard Draper v. Workers' Compensation Appeal Board (Penn State University)* (Pa.Cmwlth., No. 2645 C.D.2002, filed July 29, 2003)[2] (hereinafter, *Draper*), we noted that the WCJ had failed to specifically find the degree of causation, if any, of the 1990 injury in relation to the 1999 disability. Relatedly, we further noted that the WCJ had failed to expressly address whether Claimant's 1990 injury materially contributed to Claimant's total disability in the wake of the 1999 injuries, and that such an inquiry was essential to the proration to be assigned to the respective insurers. We further noted, in a footnote in *Draper*, that the WCJ was less than clear as to whether the 1999 injuries had aggravated the 1990 injury, in the legal sense of that term, and/or whether the legal concept of recurrence under the Act was applicable. Accordingly, we remanded the matter to the WCJ for findings on whether Claimant's 1990 injury materially contributed to Claimant's total disability, and for any concomitant and appropriate apportionment of the benefits due between the respective insurers pursuant to our applicable precedents.

On remand, the WCJ concluded that Claimant's 1990 injury substantially, materially, and equally contributed to Claimant's disability in the wake of the 1999 injuries. He further concluded that Claimant was entitled to continue receiving partial benefits from PMA in regards to the 1990 injury, and that both PMA and Safety were equally liable for payment of Claimant's total disability benefits commencing forward from 1999. By order circulated April 8, 2004, the WCJ ordered such payments from the two insurers, with applicable interest, to Claimant. PMA thereafter timely appealed the WCJ's order to the Board, which heard the matter

2. We note that additional details regarding the factual history of this case, as well as additional legal issues previously addressed by this Court, the WCJ, and the Board, which are not relevant to the single issue at bar, can be found in this Court's prior opinion. Additional issues referenced in our prior opinion in this matter, yet not before this Court in the instant matter, have been excluded in the interests of clarity.

on argument from the parties without receiving any additional evidence.

The Board agreed with PMA's argument on appeal that it should only be responsible for the ongoing payment of Claimant's partial disability resulting from the 1990 injury. The Board concluded that the WCJ had erred in determining that PMA was liable for anything except for the ongoing payment of partial disability at the rate it was paying as a result of the 1990 injury at the time of the 1999 injuries, reasoning that:

> [b]ecause Claimant was receiving partial disability benefits following the 1990 work injury and Claimant subsequently sustained the 1999 work injury resulting in total disability, the benefits against PMA should have continued at the partial disability level ... Benefits should have been awarded against Safety as the insurer on the risk as of the second injury based on Claimant's average weekly wage as of the date of the second injury.

Board Opinion of March 22, 2005, at 6 (citations omitted). Accordingly, the Board modified the WCJ's apportionment to reflect its analysis. Safety now petitions this Court for review of the Board's order.[3]

■ Safety presents only one issue in the instant appeal: whether the Board erred, in the wake of the WCJ's Finding on remand that Claimant's 1990 injury was a substantial contributing factor to Claimant's total disability in the wake of his 1999 injuries, in concluding that Claimant's total disability benefits should not have been apportioned *equally* between PMA and Safety.

We first note that the WCJ, in his decision following our remand in *Draper*, failed to cite to, or apply, any of the legal principles of any of our precedents addressing apportionment. Our decision in *Draper* clearly set forth, *inter alia*, the factual similarity of the matter *sub judice* to that in *Trenton China Pottery v. Workers' Compensation Appeal Board (Mensch)*, 773 A.2d 1265 (Pa.Cmwlth.2001). The Board, however, correctly applied *Trenton's* rule to the instant facts following the WCJ's applicable remand Findings.

■ The apportionment of liability for claimants suffering successive injuries is permitted, but not mandated, by Section 322 of the Act.[4] We have recognized two specific differing scenarios under which such apportionment is appropriate in *South Abington Township v. Workers' Compensation Appeal Board (Becker and ITT Specialty Risk Services)*, 831 A.2d 175, 180–181 (Pa.Cmwlth.2003),[5] stating:

---

3. This Court's scope of review is limited to determining whether there has been a violation of constitutional rights, errors of law committed, a violation of Board procedures, and whether necessary findings of fact are supported by substantial evidence. *Lehigh County Vo–Tech School v. Workmen's Compensation Appeal Board (Wolfe)*, 539 Pa. 322, 652 A.2d 797 (1995).

4. Section 322 provides, in pertinent part:
   Nothing in this section shall be deemed to prohibit payment of workers' compensation on a pro-rata basis, where an employe suffers from more than one injury while in the employ of more than one employer: Provided,

> however, That the total compensation paid shall not exceed the maximum weekly compensation payable under this act: And, Provided further, That any such pro rata calculation shall be based upon the earnings by such an employe in the employ of each such employer and that all wage losses suffered as a result of any injury which is compensable under this act shall be used as the basis for calculating the total compensation to be paid on a pro-rata basis.
> 77 P.S. § 677.

5. We note that *South Abington*, among other precedents, has applied Section 322 appor-

Our courts have recognized two such situations [where apportionment is appropriate]. First is that represented by *Franklin Steel Co. v. Workmen's Compensation Appeal Board (Clark)*, 665 A.2d 1310 (Pa.Cmwlth.1995), in which two separate work-related injuries result in two entirely separate medically disabling conditions, both of which combined to cause total disability, or lack of earning power. As our Supreme Court has noted in discussing *Franklin Steel*, "Where it is impossible to determine which injury caused a claimant's total disability, it is reasonable to make both insurers contribute to the claimant's benefit package." *L.E. Smith Glass Co. v. Workers' Compensation Appeal Board (Clawson)*, 571 Pa. 594, 600, 813 A.2d 634, 638 (2002).

The other situation in which apportionment has been recognized is where an initial workplace injury leads to a medical condition causing a partial disability, or impairment of earning power, and then a second workplace injury results in a total loss of earning power. In that circumstance, the first employer (or insurance carrier) continues to pay partial disability benefits which compensate claimant for the reduction in earning power occasioned by the first injury, while the second employer or carrier pays total disability benefits based upon the modified wage at the time of the second injury, thus compensating claimant for the additional loss of earning

power. This is the situation in *Trenton China Pottery v. Workers' Compensation Appeal Board*, 773 A.2d 1265 (Pa. Cmwlth.2001) ... As the [*Clawson*] court noted, "The partial disability award for the first injury is intended to make up the difference between pre-injury earning power and post-injury earning power. The total disability award for the second injury only accounts for the loss of earning power caused by the second injury, which was already reduced because of the partial disability." 571 Pa. at 602, 813 A.2d at 638.

In the instant matter, none of the parties hereto dispute the WCJ's Finding that the 1990 injury materially and substantially contributed to Claimant's ongoing total disability in the wake of the 1999 injuries. We disagree with Safety's assertion that the Board somehow disturbed that factual finding. Rather, the Board applied that Finding to the applicable law, which the WCJ failed to do. The crux of Safety's argument to this Court is that the Board misapplied *Trenton China* to the instant facts. While we agree with Safety's concession that *Trenton China* controls the instant disposition,[6] we disagree with Safety's characterization of the Board's application of that precedent as error.

In *Trenton China*, a claimant was receiving partial disability benefits following a return to employment, and was subsequently completely disabled as a result of a second work-related injury. As in the

tionment authority to two successive insurers of one employer.

6. We reject Safety's argument that either *Franklin Steel,* or its progeny *Guard Insurance Group and Railworks v. Workers' Compensation Appeal Board (York and TIG Premier Insurance),* 864 A.2d 1285 (Pa.Cmwlth.2005), apply to the matter at bar, and/or mandate apportionment for Claimant's total disability equally between the two insurers herein.

Those precedents both address two entirely separate medically disabling conditions, both of which combined to cause total disability or lack of earning power, and as such, are distinguishable from the instant facts. Our recitation, *supra,* of *South Abington's* analysis of the two differing bodies of apportionment precedents illustrates the inapplicability of *Franklin Steel* and *Guard Insurance* to the matter at hand.

instant case, *Trenton China* also involved two different insurers—one who insured the employer at the time of the first work-related injury, and a different insurer at the time of the second injury. We reasoned therein that both injuries substantially contributed to the claimant's disability, and apportioned compensation between the two insurers such that the subsequent insurer was liable for benefits based upon claimant's average weekly wage (AWW) at the time of the second work injury, while the prior insurer was liable for partial disability benefits based upon the difference between the claimant's AWW at the time of the first work injury and his AWW at the time of the second work injury. *Trenton China*, 773 A.2d at 1268. As we have stated previously, the receipt of concurrent partial and total disability benefits, limited by the maximum allowable rate under the Act, is logically sound due to the fact that, but for the claimant's initial partial disability, he would have been receiving a higher wage at the time of the subsequent total disability. *Reliable Foods, Inc. v. Workmen's Compensation Appeal Board (Horrocks)*, 660 A.2d 162 (Pa.Cmwlth.1995) (when first injury results in partial disability, it is presumed that claimant is incapable of earning pre-injury wage but potentially capable of returning to work with reduced earning capacity; receipt of concurrent benefits from two different insurers is permissible in successive-injury scenarios where maximum compensation benefit is not exceeded).

While Safety acknowledges the above articulated principles from *Trenton China*, it argues that the Board erred in its application. The Board stated:

The [WCJ] determined that Claimant's 1990 work injury and his 1999 work injury were both substantial contributing factors to Claimant's total disability as of and after November 1, 1999. (Finding of Fact 22).

Upon review, the [WCJ] erred in determining that PMA was liable for anything in excess of the partial disability rate of $64.80 per week. Because Claimant was receiving partial disability benefits following the 1990 work injury and Claimant subsequently sustained the 1999 work injury resulting in total disability, the benefits against PMA should have continued at the partial disability level. *Trenton China; Clawson.*[7] *Benefits should have been awarded against Safety as the insurer on the risk as of the second injury based on Claimant's average weekly wage as of the date of the second injury. Id.* Furthermore, the Commonwealth Court's Opinion on remand herein states "both *Trenton China* and [*Reliable Foods*] mandate that PMA continue assuming its liability for the 1990-related partial disability portion of Claimant's current benefits, while Safety assume liability for the 1999-related total disability benefits." (Opinion and Order, p. 10). We will therefore modify the [WCJ's] Decision and Order to reflect that PMA is ordered to continue to pay Claimant benefits of $64.80 per week. Safety is ordered to pay disability benefits of $294.00 per week for the duration of Claimant's disability.

Board Opinion at 5–6 (emphasis added).

Contrary to Safety's interpretation of *Trenton China* in its argument hereto, the

---

**7.** We further reject Safety's argument that the Board errantly applied *Clawson* to this matter. In reading the Board's opinion as a whole, it is clear that the Board cited to *Clawson* as support for general apportionment principles, and did not apply its factually distinguishable holding hereto, but instead solely and correctly applied the holding from *Trenton China*.

Board's modification in the instant matter reflects the exact same disposition of a substantially similar factual scenario as this Court applied in *Trenton China*. Safety has failed to discern from that precedent that, despite a similar finding that both work-related injuries "substantially contribute[d]" to the claimant's ongoing disability, the WCJ therein erred in apportioning the benefits equally between the two insurers, and that the apportionment therein—and herein—"must be based on the employee's earnings *at the time each of the insurers provided coverage to the employer*", and not, as Safety proposes, in relation to any quantification of the prior injury's substantial contribution to the current disability. *Trenton China* at 1268–1269.

Safety has founded much of its argument upon this Court's remand direction to the WCJ to more specifically find what, if any, contribution the 1990 injury bears to the 1999 total disability. Safety misapprehends the applicability of such a relationship to the apportionment at issue.

As this Court further explained in *South Abington*,[8] 831 A.2d at 181–182:

> [W]here a claimant has returned to work after his first injury and then a worsening of his ongoing medical impairment causes renewed disability, we have sought to determine whether the worsened condition results from a recurrence or an aggravation of the original injury. We have held that if a compensable disability results directly from a prior injury but manifests itself on the occasion of an intervening incident which does not

contribute materially to the physical disability, then the claimant has suffered a recurrence. Conversely, where the intervening incident does materially contribute to the renewed physical disability, a new injury, or aggravation, has occurred. *SKF USA, Inc. v. Workers' Compensation Appeal Board (Smalls)*, 728 A.2d 385, 387 (Pa.Cmwlth.1999). It is well settled in Pennsylvania that an "aggravation of a pre-existing condition" is deemed a new injury for purposes of workers' compensation law, thus, rendering the employer's current insurance carrier responsible for all medical and wage loss benefits arising from claimant's new injury. *Lackawanna Refuse v. Workmen's Compensation Appeal Board (Christiano)*, 74 Pa.Cmwlth. 286, 459 A.2d 899, 899 (1983). *See also Reliable Foods, Inc.*, 660 A.2d at 166 n. 9. Alternatively, if a claimant has sustained a "recurrence of a prior injury," the insurance carrier responsible for employer's coverage at the time of claimant's original injury will be held liable for all disability benefits resulting from claimant's most recent injury. *Lackawanna Refuse*, 459 A.2d at 900. The terms "aggravation of a pre-existing condition" and "recurrence of a prior injury" are legal terms of art that are utilized to attribute causation of the current disability to a particular event or series of events. *Reliable Foods, Inc.*, 660 A.2d at 166. However, as we noted in *SKF USA*, "In most situations where this sort of dispute arises, both the original injury and the subsequent occur-

---

8. We are cognizant that *South Abington* addressed a recurrence/aggravation scenario in relation to two successive work-related incidents, as distinguished from the instant facts where it has been established that Claimant's second work-related injury included both an aggravation of a prior injury, and a distinct new injury. We cite to *South Abington* not

for its precedential value to the instant facts, but for its cogent and concise illustration of the two separate lines of apportionment precedents, and the rationales supporting each. As noted in our foregoing analysis, the rule of *Trenton China* is dispositive to the instant matter.

rence contribute in some way to the disability at issue. Nonetheless, [where claimant worked for different employers (or one employer had different carriers) at the time of the two events, we] must attribute causation of the current disability to one event or the other." 728 A.2d at 387. In the recurrence scenario the second employer has no responsibility at all because the second event has not materially contributed to the claimant's current condition. *In the case of an aggravation, the second employer bears the entire responsibility for the claimant's recent loss of earning power despite the fact that both injuries materially contributed to his current physical condition.*

In other words, while we allocate liability for benefits based on relative contributions to claimant's total lack of earning power, as in *Franklin Steel* or *Trenton China Pottery*, neither the Act nor our case law has ever attempted to allocate responsibility based upon relative contributions of separate injuries to a single disabling medical condition. This is true for two reasons. First, where a second workplace injury aggravates a medical condition caused by the first, it is often impossible to determine what share each injury played in the ultimate medical impairment. Second, employers take claimants as they are at the time of injury … Accordingly, *where a second workplace injury aggravates the condition in which claimant was left by the first, we allocate responsibility for payment of benefits based upon the impact each injury has upon earning power, not upon the relative causal contribution of each to the ultimate physical disability.*

(Emphasis added).

*South Abington's* analysis of the scheme of liability interplay between recurring and aggravating injuries illustrates our prior need to remand for findings regarding the material contribution of Claimant's 1990 injury to Claimant's total disability in the wake of his 1999 injury. The WCJ's error herein in apportioning wage loss liability stems, apparently, from the WCJ's sole and narrow reliance upon our broad remand language, including our direction that more specific findings be made on the relation of the 1990 injury to the ongoing total disability. The WCJ's Findings that the 1990 injury materially and substantially contributed to the total disability arising in 1999 does not dispose of the apportionment issue. The proper apportionment of liability for Claimant's wage loss benefits was not to be controlled by our broad remand request taken in isolation from the controlling principles of law as stated in *Draper,* including and especially those found in *Trenton China.*

It is *Trenton China's* rule regarding apportionment, in the wake of the WCJ's Findings on remand and as applied thereto correctly by the Board, that controls the apportionment between PMA and Safety. As such, the Board did not err in applying *Trenton China* to the Findings as made by the WCJ, and did not err in modifying the WCJ's order to reflect *Trenton China's* rule.

Accordingly, we affirm.

### ORDER

AND NOW, this 30th day of November, 2005, the order of the Workers' Compensation Appeal Board dated March 22, 2005, at A04–1122, is affirmed.