Kathy Hammill Becht,                          :
                        Petitioner       :
                                             :
                 v.                              :
                                             :
Workers' Compensation Appeal Board   :
(Daqle Holdings, LLC, Cincinnati      :
Insurance Company and Panera Bread),  :   No. 1655 C.D. 2017
                    Respondents        :   Submitted: May 4, 2018

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: August 3, 2018

        Kathy Hammill Becht (Claimant) petitions for review of an order by the Workers' Compensation Appeal Board (Board) affirming the decision and order of Workers' Compensation Judge Carmen Lugo (WCJ) dismissing Claimant's Claim Petition for Compensation Benefits (Claim Petition) and Petition to Reinstate Compensation Benefits (Reinstatement Petition) filed against Daqle Holdings, LLC/Panera Bread (Employer) pursuant to the Workers' Compensation Act[1] (Act). We affirm in part, vacate in part, and remand for further findings.

        On May 4, 2010, while working for Employer as a director of operations, Claimant sustained an L4-L5 spinal injury that required surgical

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2708.

intervention in the form of a lumbar spinal fusion at L4-L5. Claimant received workers' compensation (WC) benefits as a result of this work injury.

On January 29, 2014, Employer filed a petition to terminate Claimant's WC benefits. In support of this petition, Employer presented the deposition testimony of Gerard J. Werries, M.D., who had conducted an independent medical examination of Claimant. Dr. Werries opined that Claimant had fully recovered from her work injury and subsequent surgical fusion at L4-L5, and that Claimant's "mild adjacent arthritic changes at L3-[L]4 . . . were not as a result of the surgery . . . [but instead] due to the natural progression of arthritis at that level versus stress from the previous fusion site." WCJ Decision and Order dated October 29, 2014 (2014 WCJ Decision) at 4. The WCJ found Dr. Werries' testimony credible and, based thereon, issued the 2014 WCJ Decision finding that Claimant's L4-L5 fusion was solid, that she was fully recovered from her May 4, 2010 work injury, and that the natural progression of existing natural arthritis caused her spinal stenosis at L3-L4, not the work injury or the L4-L5 fusion. *See* 2014 WCJ Decision at 4-5. Accordingly, the WCJ terminated Claimant's WC benefits. *Id.* at 5. Claimant appealed and the Board affirmed by opinion dated December 8, 2015 (2015 Board Opinion). Claimant did not appeal the 2015 Board Opinion to this Court.

After the termination of her WC benefits in October 2014, Claimant returned to work and regular duty. She continued, however, to seek medical attention for symptoms, including occasional steroid injections in her lower back from David M. Babins, M.D., with the last of these injections occurring on March 5, 2015.

On March 18, 2015, Claimant twisted her back as she attempted to assemble an ice cream machine while working for Employer. Subsequently,

Claimant filed a Reinstatement Petition seeking reinstatement of her previous WC benefits as a result of an alleged recurrence of her 2010 disabling condition that occurred on March 18, 2015 as she attempted to assemble the ice cream machine at work. *See* Reinstatement Petition. As an alternative to the Reinstatement Petition, Claimant also separately filed a Claim Petition seeking WC benefits based on the March 18, 2015 event, alleging an "Aggravation of Lumbar Spine stenosis[.]" *See* Claim Petition.

The WCJ conducted hearings on June 8, 2015 and June 1, 2016, during which Claimant and a co-worker testified. *See* Notes of Testimony (N.T.) 6/8/2015 & 6/1/2016. The WCJ also received into evidence Dr. Babins' deposition testimony. *See* Deposition Testimony of David M. Babins, M.D., December 1, 2015 (Babins Deposition).

On November 3, 2016, the WCJ issued a Decision and Order holding that, because the 2014 WCJ Decision had determined that Claimant had fully recovered from her 2010 work injury and that the arthritis observed at her L3-L4 was not related to the 2010 work injury, Claimant's Reinstatement Petition was barred by *res judicata* and collateral estoppel. *See* WCJ Decision and Order dated November 3, 2016 (2016 WCJ Decision) at 6-7. The 2016 WCJ Decision accordingly denied Claimant's Reinstatement Petition. *Id.* at 7. The 2016 WCJ Decision also denied the Claim Petition, finding that Claimant had not met her burden of proving that a new work injury occurred on March 18, 2015. *Id.* Claimant appealed, and the Board affirmed the 2016 WCJ Decision by opinion and order dated

3

October 13, 2017. *See* Board Opinion dated October 13, 2017 (2017 Board Opinion). This appeal followed.[2]

In essence, Claimant now claims the Board erred by holding that her Reinstatement Petition was barred by collateral estoppel and by denying her Claim Petition because she failed to prove an aggravation of her 2010 injury or a new injury. Claimant's Brief at 28-35. While we agree that Claimant's Reinstatement Petition is barred by collateral estoppel, we cannot determine whether the WCJ and the Board erred regarding the Claim Petition without further findings by the WCJ.

Section 413(a) of the Act authorizes the reinstatement of terminated disability benefits "upon proof that the disability of an injured employe[e] has increased, decreased, [or] recurred[.]" 77 P.S. § 772. "A claimant seeking reinstatement of benefits following a termination carries a heavy burden because the claimant has been adjudicated to be fully recovered." *Namani v. Workers' Comp. Appeal Bd. (A. Duie Pyle)*, 32 A.3d 850, 854 (Pa. Cmwlth. 2011) (quoting *Nat'l Fiberstock Corp. (Greater N.Y. Mut. Ins. Co.) v. Workers' Comp. Appeal Bd. (Grahl),* 955 A.2d 1057, 1062 (Pa. Cmwlth. 2008)). In reinstatement petitions, the claimant must prove that: "(1) his earning power is once again adversely affected by his disability[;] and[] (2) the disability is a continuation of the disability that arose from his original claim." *Ingrassia v. Workers' Comp. Appeal Bd. (Universal*

---

[2] This Court's "scope of review is limited to determining whether constitutional rights have been violated, whether an error of law was committed and whether necessary findings of fact are supported by substantial evidence." *Morocho v. Workers' Comp. Appeal Bd. (Home Equity Renovations, Inc.)*, 167 A.3d 855, 858 n.4 (Pa. Cmwlth. 2017) (citing *Johnson v. Workmens' Comp. Appeal Bd. (Dubois Courier Express)*, 631 A.2d 693 (Pa. Cmwlth. 1993)); *see also* Section 704 of the Administrative Agency Law, 2 Pa. C.S. § 704. "Substantial evidence is such relevant evidence a reasonable person might find sufficient to support the WCJ's findings." *Frog, Switch & Mfg. Co. v. Workers' Comp. Appeal Bd. (Johnson)*, 106 A.3d 202, 206 (Pa. Cmwlth. 2014).

4

*Health Servs., Inc.),* 126 A.3d 394, 401 (Pa. Cmwlth. 2015) (citing *Bufford v. Workers' Comp. Appeal Bd. (North Am. Telecom),* 2 A.3d 548, 558 (Pa. 2010)).

"With respect to a claim petition, the claimant bears the initial burden of proving that [an] injury arose in the course of employment and was related thereto." *Frankiewicz v. Workers' Comp. Appeal Bd. (Kinder Morgan, Inc.)*, 177 A.3d 991, 995 (Pa. Cmwlth. 2017). "Generally, if there is no obvious relationship between the disability and the work-related cause, unequivocal medical testimony is required to meet this burden of proof." *Id.* "Medical evidence is considered unequivocal if the medical expert, after providing a foundation, testifies that in his medical opinion, he thinks the facts exist." *Craftsmen v. Workers' Comp. Appeal Bd. (Krouchick)*, 809 A.2d 434, 439 (Pa. Cmwlth. 2002).

"The terms 'aggravation of a pre-existing condition' and 'recurrence of a prior injury' are legal terms of art that are utilized to attribute causation of the current disability to a particular event or series of events." *S. Abington Twp. v. Workers' Comp. Appeal Bd. (Becker & ITT Specialty Risk Servs.)*, 831 A.2d 175, 181–82 (Pa. Cmwlth. 2003). "In workers' compensation law, 'aggravation' is a term of art denoting a new injury, as opposed to the resumption or manifestation of symptoms from a past injury[,]" which is known as a "recurrence" of the prior injury. *Zurn Indus. v. Workers' Comp. Appeal Bd. (Bottoni)*, 755 A.2d 108, 111 (Pa. Cmwlth. 2000). Both aggravations and recurrences of prior work-related injuries are compensable under the Act. *Chik-Fil-A v. Workers' Comp. Appeal Bd. (Mollick)*, 792 A.2d 678, 688–89 (Pa. Cmwlth. 2002). "A work-related aggravation of a prior non-work-related condition is . . . [also] compensable." *Am. Contracting Enters., Inc. v. Workers' Comp. Appeal Bd. (Hurley)*, 789 A.2d 391, 396 (Pa. Cmwlth. 2001) (claimant with history of shoulder problems). However, "a disability

that results from the natural progression of a non-work-related pre-existing condition is not compensable under the Act." *Locher v. Workers' Comp. Appeal Bd. (City of Johnstown)*, 782 A.2d 35, 38 (Pa. Cmwlth. 2001).

> This Court has explained:
>
> An employee who experiences an injury based on the aggravation of a pre-existing condition is entitled to benefits if she shows that the aggravation arose in the course of employment, the aggravation was related to the employment, and disability resulted. To show that an injury was related to employment, the employee must establish a causal connection between work and the injury. When the connection between the injury or the aggravation and work is not obvious, unequivocal medical testimony is necessary. Moreover, where a claimant had an underlying condition that is not work related, she must show continuing existing disability in order to receive benefits. Therefore, if restrictions are placed on a claimant that are causally related to the work-related aggravation, the claimant is entitled to benefits.

*Chik-Fil-A*, 792 A.2d at 688-89 (internal citations omitted).

Here, Claimant testified that she first sustained a back injury at work on May 4, 2010 that ultimately required an L4-L5 spinal fusion. N.T. 6/8/2015 at 13-40. Claimant ultimately returned to work and resumed her normal duties. *Id.* at 15-16.

Claimant stated that she suffered a second back injury while assembling an ice cream machine at work on March 18, 2015. N.T. 6/8/2015 at 17, 35. Claimant explained that while making a twisting motion to place a cylinder into the ice cream machine, she experienced "very, very sharp pains" in her back located slightly above the incision site from her previous spinal fusion surgery. *Id.* at 17-18. In addition

6

to pain, Claimant began experiencing muscle spasms in her back and pain radiating down her legs. *Id.* at 22. She presented to Dr. Babins on March 24, 2015 for her March 18, 2015 injury. *Id.* Dr. Babins examined Claimant, took x-rays, prescribed a steroid pack, and directed her to have an MRI performed. *Id.* at 23-24. Claimant explained that Dr. Babins also removed her from work for a period of eight weeks at that time and after Dr. Babins reviewed the MRI, he recommended an additional two months off work. *Id.* at 24-25.

Claimant has not returned to work since Dr. Babins took her off work. N.T. 6/8/2015 at 29. She testified that, while her symptoms have subsided somewhat, she is unable to perform her previous work duties because she cannot turn, twist, reach up or down, or move any product. *Id.* at 27. Claimant also testified that she experiences more muscle spasms and sharper pain since the March 18, 2015 incident. *Id.* at 28-29. Claimant testified that, whereas her pain following the 2010 injury and surgery had not kept her from working, her pain level following the March 18, 2015 incident did prevent her from performing her job. N.T. 6/1/2016 at 56. Claimant testified that, prior to the March 18, 2015 incident, her pain was dependent on her activity level, whereas since that incident, her pain has been more constant and more severe. *Id.* at 55-56.

The WCJ accepted into evidence Dr. Babins' December 1, 2015 deposition testimony. *See* Babins Deposition. Dr. Babins first saw Claimant on May 5, 2010 for acute lower back pain following her original work injury. Babins Deposition at 6. After a period of unsuccessful conservative treatment, another physician ultimately diagnosed Claimant with lumbar spinal stenosis and lumbar instability and performed surgery on Claimant's back. *Id.* at 6-7. Although her condition and pain improved after the surgery, Dr. Babins continued to treat

7

Claimant post-surgery with intermittent medications and occasional steroidal injections into the joints and nerve roots in Claimant's back to alleviate her back and leg pain. *Id.* at 7. Dr. Babins described the steroid injections as "palliative," meaning they were intended to lessen, not eradicate, Claimant's symptoms. *Id.* Dr. Babins administered the last of these palliative injections on March 5, 2015, just under two weeks before Claimant's new March 18, 2015 back injury. *Id.*

Claimant presented to Dr. Babins again on March 24, 2015 with increasing lower back pain and fatigue related to lower back pain following the March 18, 2015 incident. Babins Deposition at 7-8. Dr. Babins had x-rays taken at that time that showed Claimant's L4-L5 fusion was intact. *Id.* Dr. Babins' impression at the time was "recurrent lower back pain, status post-fusion, with concern for adjacent lumbar instability or disease." *Id.* at 8. Dr. Babins prescribed a steroid pack and ordered an updated MRI examination. *Id.* at 8-9.

Dr. Babins saw Claimant again on April 10, 2015, after she had the new MRI performed. Babins Deposition at 9. Dr. Babins explained the new MRI showed an epidural fibrosis – or scarring – around the level of the previous surgery and adjacent level disease stenosis – or narrowing of the column holding Claimant's nerves – at L3-L4. *Id.* Dr. Babins further explained that, compared to Claimant's previous 2013 MRI study, Claimant exhibited significant progression of the disease above the level of fusion at L3-L4 with more bulging of the disc and the creation of severe central canal stenosis not previously apparent. *Id.* at 9-10. Unlike Dr. Werries' 2014 conclusion that the natural progression of existing arthritis caused Claimant's spinal stenosis at L3-L4, which the WCJ 2014 Decision credited, Dr. Babins stated that Claimant's severe central canal stenosis at L3-L4 was a direct consequence and sequela of Claimant's previous work-related fusion

8

surgery. *Id.* Additionally, Dr. Babins "opined that 'as a result of **both** the proceeding [sic] injury surgery and the more recent exacerbation of March, (the Claimant) has significant limitations with her abilities to perform her job at Panera.'" 2016 WCJ Decision at 5, Findings of Fact (F.F.) No. 7 (emphasis added). When he last saw her on July 28, 2015, Dr. Babins released Claimant to return to work pursuant to the restrictions outlined in a functional capacity evaluation report prepared by a third-party rehabilitation provider. *Id.* at 26.

Employer relied upon and entered into evidence the 2014 WCJ Decision and the 2015 Board Opinion affirming the 2014 WCJ Decision. In 2014, the WCJ had accepted the testimony of Employer's medical expert Dr. Werries, who testified that Claimant's L3-L4 disc disease resulted not from Claimant's 2010 work injury, but instead from unrelated arthritic changes, opining that the spinal stenosis was a natural progression of the disease at L3-L4. *See* 2016 WCJ Decision at 6; *see also* 2014 WCL Decision at 4-5. Employer did not offer medical evidence relating to the March 18, 2015 incident or its effect on the Claimant's preexisting disease.

### 1. *The Reinstatement Petition.*

Here, the WCJ determined that collateral estoppel barred the Reinstatement Petition. *See* 2016 WCJ Decision at 6. By accepting Dr. Werries' testimony, the 2014 WCJ Decision had previously determined that: (1) Claimant had fully recovered from her 2010 injury; and (2) the mild stenosis at Claimant's L3-L4 was not the result of her L4-L5 fusion, but instead was caused by the natural progression of arthritis at that level of her spine. *See* 2014 WCJ Decision at 4-5. As such, the 2014 WCJ Decision limited the scope of Claimant's 2010 injury to the L4-L5 level of her spine and expressly stated that Claimant's L3-L4 arthritic issues were unrelated. *Id.* The Board affirmed the 2014 WCJ Decision and Claimant did not

appeal, thus limiting the scope of Claimant's 2010 injury. *See* 2015 Board Opinion; *see also McNeil v. Workers' Comp. Appeal Bd. (Dep't of Corr., SCI-Graterford)*, 169 A.3d 171, 176 (Pa. Cmwlth. 2017), *appeal denied*, 181 A.3d 1124 (Pa. 2018) (noting that, where a claimant does not appeal a WCJ's or the Board's determination regarding the scope of a work injury, the determination becomes a final order as to the scope of the work injury and collateral estoppel will preclude future attempts to relitigate the scope of the work injury); *Williams v. Workers' Comp. Appeal Bd. (S. Hills Health Sys.)*, 877 A.2d 531, 535 (Pa. Cmwlth. 2005) (holding that WCJ decision that limited the scope of claimant's injury and found injury had resolved precluded a reinstatement petition to expand scope of original injury). The WCJ determined that the Reinstatement Petition's allegation that Claimant's March 18, 2015 L3-L4 injury was a recurrence of her 2010 injury was an attempt to relitigate and expand the scope of Claimant's 2010 injury to include the L3-L4 stenosis previously attributed to natural arthritic changes. *See* 2016 WCJ Decision at 6. Therefore, based on the 2014 WCJ Decision, the WCJ determined Claimant's Reinstatement Petition was barred by collateral estoppel. *See* 2016 WCJ Decision at 6.

We agree that the 2014 WCJ Decision precludes a claim that Claimant's March 18, 2015 injury was a recurrence of her 2010 work-related injury. The 2014 WCJ Decision and 2015 Board Opinion limited the scope of Claimant's 2010 work injury to her L4-L5 issues and expressly stated that her L3-L4 issues resulted from natural arthritic progression, not the 2010 work injury. Because the 2015 Board Opinion affirming the 2014 WCJ Decision is final, Claimant cannot now use a reinstatement petition to expand the scope of the 2010 work injury to include either the 2015 injury or the L3-L4 level changes where the WCJ previously found the

10

2010 work injury to be limited to Claimant's L4-L5 and fully resolved. *See McNeil*, *Williams*. Otherwise stated, per the 2014 WCJ Decision, Claimant's L3-L4 condition did not form part of the 2010 injury, and therefore, it could not have "recurred" for the purpose of reinstating the WC benefits terminated by the 2014 WCJ Decision. Accordingly, the Board properly affirmed the WCJ's denial of Claimant's Reinstatement Petition.

## 2. *The Claim Petition.*

The WCJ's determination that collateral estoppel precluded Claimant from claiming in the Reinstatement Petition that her L3-L4 stenosis was a recurrence of her 2010 injury warranting a reinstatement of the previously received WC benefits, however, does not preclude the claim that the March 18, 2015 incident caused an aggravation of the preexisting stenosis at L3-L4 that constituted a new injury causing disability to Claimant.

Employer in this case relied upon Dr. Werries' 2014 opinion and the WCJ's 2014 Decision crediting that opinion to establish that the L3-L4 stenosis was a natural arthritic condition.

> [E]mployers take claimants as they are at the time of injury. If a claimant has a non-work[-]related predisposition which is rendered fully disabling by a workplace injury that would not have disabled other workers, employer is 100% liable for benefits even if the injury is only 5% responsible for the resulting physical impairment.

*S. Abington Twp.*, 831 A.2d at 182. The employer "bears full responsibility for whatever loss of earning power is occasioned by the aggravation." *Id.* This is so

11

even where a disability is caused by a combination of a preexisting condition and work-related intervening event or incident. *See Fotta v. Workmen's Comp. Appeal Bd. (U.S. Steel/USX Corp. Maple Creek Mine)*, 626 A.2d 1144 (Pa. 1993) (holding that where record revealed employee's disability was partly attributable to a work-related 2-foot fall in addition to a preexisting condition, a referee's finding that employee was not entitled to WC benefits was not supported by substantial evidence).

In denying the Claim Petition, the WCJ seized on Dr. Babins' description of Claimant's March 18, 2015 injury as an "exacerbation" that caused a "transient increase" in Claimant's symptoms as follows:

> Claimant's medical expert, Dr. Babins, opined that the Claimant has stenosis at the L3-[L]4 level, which is the level adjacent to the prior fusion, and that the disease at L3-[L]4 is significantly worse in the April 2015 MRI as compared to the August 2013 MRI. Dr. Babins opined that the L3-[L]4 stenosis is directly related to the prior fusion and that the March 18, 2015 injury was an exacerbation that caused a "transient increase" in symptoms.

2016 WCJ Decision at 6, F.F. No. 12(c). Additionally, while Dr. Babins testified that he believed the L3-L4 stenosis was related to the surgery for the prior 2010 work injury, the 2014 WCJ Decision, which is final and binding, makes clear that the L3-L4 condition was natural disease progression and this determination was reiterated as a finding by the WCJ in this matter. A work-related aggravation of a pre-existing non-work-related disease is compensable and considered a new injury. *See Chik-Fil-A*, *Am. Contracting*; *cf.* 77 P.S. § 411 (defining injury as an injury "arising in the course of his employment and related thereto, and such disease or infection as

12

naturally results from the injury or is aggravated, reactivated or accelerated by the injury . . .").  However, here, the WCJ stated that a transient increase in symptoms of a preexisting non-work-related condition is not compensable.  The WCJ found:

> As to the March 18, 2015 event, Dr. Babins testified it caused a temporary increase in symptoms and exacerbated the Claimant's underlying condition.  The Claimant had been treating with Dr. Babins and, in fact, received an injection on March 5, 2015, just 13 days before the March 18, 2015 event.  Therefore, the temporary increase in symptoms is found not to be a new distinct injury or an aggravation of [the] underlying condition so as to be considered a new injury, Dr. Babins opined that the L3-[L]4 disc disease is related to the L4-[L]5 fusion surgery performed to treat the May 4, 2010 work injury.  He noted that the 2015 MRI showed a worsening in the disc disease at L3-[L]4 and compared to the 2013 MRI; however he did not opine that the 2015 event caused the worsening of the L3-[L]4 disc.  He described [that] the Claimant had a temporary increase in symptoms.  Symptoms he had been seeing her for and, in fact, had given her an injection for just 13 days before the March 18, 2015 event.

2016 WCJ Decision at 7, F.F. No. 12(h).  Based on these findings, the WCJ found that Claimant failed to establish that the March 18, 2015 event caused a new injury or aggravation of underlying disease at L3-L4 and therefore had not met her burden of proof as to the Claim Petition.  *See* 2016 WCJ Decision at 7.

In summarizing the evidence presented, the WCJ stated, "Dr. Babins opined that 'as a result of **both** the proceeding [sic] injury surgery and the more recent exacerbation of March, ([] Claimant) has significant limitations with her abilities to perform her job at Panera.'"  2016 WCJ Decision at 5, F.F. No. 7 (emphasis added).  Nonetheless, despite having acknowledged that Dr. Babins

13

testified that Claimant has significant limitations on her ability to perform her job as a result of **both** events, the WCJ's decision omits any discussion of whether the March 18, 2015 incident contributed to Claimant's disability. *See Fotta*; *S. Abington Twp.* Further, the 2016 WCJ Decision does not find that Dr. Babins' testimony was either equivocal or not credible. The WCJ's findings simply note that Claimant was treating for symptoms related to the 2010 incident shortly prior to the new March 18, 2015 incident and then directly proceed to the conclusion that Claimant suffered no new injury, seemingly ignoring the March 18, 2015 intervening incident. *See* 2016 WCJ Decision at 7, F.F. No. 12(h). It appears that the WCJ concludes that because Claimant suffered symptoms 13 days prior to the March 18, 2015 work incident, the increase in symptoms following the event could not be caused by the March 18, 2015 incident, despite Dr. Babins' uncontradicted testimony that both the surgery **and** the March 18, 2015 injury were the cause of Claimant's disability. Without some discussion of whether the intervening March 18, 2015 incident contributed to Claimant's disability, this Court cannot determine whether the WCJ erred in determining that Claimant has not proven an aggravation. *See S. Abington Twp.*; *Chik-Fil-A*, 792 A.2d at 688-89 (stating that a claimant asserting an aggravation of a preexisting condition must establish that (i) the aggravation arose in the course of employment; (ii) the aggravation was related to the employment; and (iii) disability resulted); *cf. Fotta*, 626 A.2d at 1147 (holding that where the claimant's disability was due in part to a work-related incident, claimant was entitled to WC benefits). This deficiency in the 2016 WCJ Decision represents an error of law. A determination of whether the March 18, 2015 work incident contributed to Claimant's disability must be made by the WCJ in his role as fact-finder. *See SKF USA, Inc. v. Workers' Comp. Appeal Bd. (Smalls)*, 728 A.2d 385, 388 (Pa. Cmwlth.

14

1999) (stating that it is the province of the WCJ to make factual findings as to causation which will lead to the ultimate legal conclusion that the claimant has sustained a separately compensable injury called an aggravation).

Accordingly, we affirm the Board's affirmation of the WCJ's denial of Claimant's Reinstatement Petition, but vacate the Board's affirmation of the WCJ's denial of the Claim Petition and remand the matter for further findings by the WCJ. In the event the WCJ determines that the March 18, 2015 incident represents a new injury because it contributed to Claimant's disability, we instruct the WCJ to include additional findings regarding the length and extent of Claimant's resulting disability and any compensation due.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Kathy Hammill Becht, :
             Petitioner :
              :
        v. :
              :
Workers' Compensation Appeal Board :
(Daqle Holdings, LLC, Cincinnati :
Insurance Company and Panera Bread), : No. 1655 C.D. 2017
           Respondents :

O R D E R

AND NOW, this 3rd day of August, 2018, the October 13, 2017 order of the Workers' Compensation Appeal Board (Board) is AFFIRMED in part regarding claimant Kathy Hammill Becht's (Claimant) Petition to Reinstate Compensation Benefits and VACATED in part with respect to Claimant's Claim Petition for Compensation Benefits (Claim Petition). The matter is REMANDED to the Board with instructions to remand to the workers' compensation judge for further findings consistent with this Court's foregoing opinion regarding Claimant's Claim Petition.

Jurisdiction is relinquished.

_____
CHRISTINE FIZZANO CANNON, Judge